## SUPREME LODGE KNIGHTS OF PYTHIAS v. WELLENVOSS.

### (Circuit Court of Appeals, Sixth Circuit. January 6, 1903.)

### No. 1,107.

1. FRATERNAL INSURANCE—RIGHT OF FORFEITURE FOR VIOLATION OF LAWS OF ORDER—WAIVER.

Conceding the right of a fraternal order, which has also an insurance department which issues benefit certificates on the lives of its members, to regulate its internal affairs according to its own laws, and to expel or suspend members for their violation, yet, where such action terminates or suspends the rights of the member with respect to his insurance, the society is bound by the rules which govern other insurance contracts, and must act with reasonable promptness. The acceptance of premiums or assessments from the member after a right of forfeiture is known is a waiver of such right.

2. SAME—WAIVER OF FORFEITURE.

A prominent member of the order of Knights of Pythias, who also held a benefit certificate in the endowment rank payable to his wife, participated in certain action taken by a number of lodges in 1893 which was deemed rebellious and a violation of his obligation to the order. Attention was called to the matter in a report of the supreme chancellor to the supreme lodge in 1894, and the expulsion of such member from the grand lodge was recommended. In 1896 suspension from the order was recommended; but no effective proceeding to that end was taken until 1898, when charges were filed and a trial in 1899 resulted in the member's suspension for two years. Up to the time of such suspension he continued to pay the assessments on his certificates, which were received, and he made tender of all assessments thereafter until his death. At the time of his suspension he was sick with a mortal disease, and died soon after, never having been in a condition to obtain other insurance. *Held* that, conceding the right at that time to suspend him from the social and fraternal benefits of the order, such action, taken so many years after the cause of suspension was known, during which time his assessments had been accepted, could not deprive his beneficiary of the right to the insurance.

In Error to the Circuit Court of the United States for the Western District of Kentucky.

This action was brought to recover upon a certain certificate of insurance held by Henry Wellenvoss, husband of the plaintiff, Elizabeth Wellenvoss, issued by the Supreme Lodge Knights of Pythias. The circuit court directed a verdict for the plaintiff. The society is of a benevolent and fraternal character, and has a department of life insurance known as the "Endowment Rank." The association was incorporated under an act of congress in 1870. Amendatory laws were subsequently passed. After the expiration of the former charter the society was incorporated under its present title by the act of congress of June 29, 1894 (28 Stat. 96), and the amenda-

¶ 1. See Insurance, vol. 28, Cent. Dig. § 1909.

tory act of June 7, 1900 (31 Stat. 708). The "Endowment Rank" was organized in 1877. It was the purpose of this branch of the order to afford life insurance to members of the society. In 1877 Henry Wellenvoss, the husband of the plaintiff, a member of one of the lodges of the Knights of Pythias, took a certificate of insurance in favor of his wife. A like certificate was issued to him for the sum of $1,000 on October 18, 1879. On April 27, 1885, he surrendered the two certificates mentioned and took out a new one for $3,000, which is the certificate in suit. This certificate contained the following language: "And in consideration of the representations and declarations made in his application, bearing date of November 28, 1877, and his absolute surrender of the certificates heretofore held by him in first and second classes for cancellation, as requested in his application for transfer to the fourth class, bearing date of April 27, 1885, all of which is made a part of this contract and the payment of the prescribed admission fee, and in consideration of the payment hereafter to said Endowment Rank of all monthly payments as required, and the full compliance with all the laws governing this rank, now in force or that may hereafter be enacted, and shall be in good standing under said laws, the sum of three thousand dollars will be paid," etc. And the further provision, also: "And it is understood and agreed that any violation of the within mentioned conditions, or the requirements of the laws in force governing this rank, shall render this certificate and all claims null and void, and that the Supreme Lodge shall not be liable for the above sum or any part thereof."

The ritual of the society was printed in English. The second and third rituals were printed in 1872 and 1882, and were both in English and German. In 1892 the Supreme Lodge determined to print the ritual in English only. Henry Wellenvoss was a member of one of the lodges using the German ritual. He, with others, protested vigorously against this change, and a meeting of the representatives of the dissatisfied lodges was held at Indianapolis in June, 1893. At this meeting Wellenvoss was an active participant and was made chairman of its executive committee. Among others, the convention passed the following resolution: "Resolved, further, that if our request asked for in the first resolution be not granted by the supreme chancellor during the recess of the Supreme Lodge, or by special session of the Supreme Lodge, within ninety days from date, then we shall take the privilege of translating such portions of the ritualistic work as will enable us to enjoy our previous privileges abrogated in legislation." And another resolution was also adopted, reading as follows: "Resolved, that, in case no action has been taken by the Supreme Lodge within ninety days from date, then the secretary of this convention shall cause the ritual to be translated, copied, and have one copy forwarded to each lodge." This resolution had reference to the request of the convention for the restoration of the German ritual. A further resolution was passed: "Resolved, that this organization shall be permanent, and that its location shall be in Chicago. That it shall be the duty of the executive officers of the organization to maintain correspondence between the different lodges, and, in case of any difficulty any other lodges may have with their respective grand lodges or the Supreme Lodge, then the organization shall at once employ the most eminent legal counsel, and at once take the matter into court, with the determination that the supreme court of the United States, if necessary, shall finally decide it." A considerable number of German rituals were printed. Afterwards many of them were seized and burned, and the attempt to coerce the society in this respect failed. Wellenvoss was active in the movement and in having the rituals printed in the German language.

At the session of the Supreme Lodge in 1894, a report was made by the supreme chancellor of the conduct of Wellenvoss and others, under the title "Disloyal Past Grand Chancellors"; Wellenvoss having been a past grand chancellor of the order. In this report that officer recommended that steps be taken at once looking to the expulsion or suspension of the past grand chancellors from further membership in the Supreme Lodge. A committee to whom the matter was referred reported that these past grand chancellors were evidently disloyal, and asked the Supreme Lodge to refer the matter to the incoming supreme chancellor, with power to take the

evidence and "to try the past grand chancellors and bring the matter to a legal conclusion." Just before the session in 1896 of the Supreme Lodge the then supreme chancellor took up the matter and appointed a past supreme chancellor to take the evidence and make the investigation in the case. As to Wellenvoss, the report of this officer to the Supreme Lodge session at Cleveland, Ohio, in 1896, disclosed that in his opinion Wellenvoss was still disloyal and insubordinate, and that "he couldn't bring him down at all," and he recommended that he be suspended from the order and his name erased from the membership of the Supreme Lodge. At this meeting Wellenvoss' name was ordered stricken from the list of past grand chancellors, and a communication was ordered sent to the Supreme Lodge of Kentucky, requiring them "to take certain steps under these instructions." Prior to this meeting in 1896 a meeting of the Grand Lodge of Kentucky was held in 1895, at which Wellenvoss was in attendance and undertook to participate in the proceedings, but was objected to because of the charges pending against him, and was refused the right of participation. Wellenvoss thereupon began a proceeding in mandamus to compel the Grand Lodge to recognize his right of membership and participation, but failed in the action both in the circuit court and the court of appeals of Kentucky. From the action of the Supreme Lodge in 1896 above stated, Wellenvoss appealed to the Supreme Tribunal. At its meeting in 1898 that body sustained the appeal and ordered Wellenvoss' name restored to the roll of past grand chancellors. About the close of the session in 1898, upon the announcement of this decision, a resolution was passed "ordering the incoming supreme chancellor to immediately take steps to renew these charges and bring the case before the Supreme Tribunal direct." In October, 1898, the then supreme chancellor filed charges, the first specification being: "That the said Henry Wellenvoss, then and now a member of the Uhland Lodge No. 4, a lodge in good standing in the order of Knights of Pythias within the grand domain of the Grand Lodge of Kentucky, did, in violation of his several obligations as a member of the order of Knights of Pythias, and as a past grand chancellor and past supreme representative, attend a meeting of so-called representatives of German lodges of the order of Knights of Pythias, held in the city of Indianapolis, Indiana, on the 12th and 13th days of June, A. D. 1893, which convention was avowedly held for the purpose of resisting the laws, orders, and decrees of the Supreme Lodge in regard to the printing of the ritual of the ranks of knighthood in the English language only." Wellenvoss answered, and a trial was had. The members of the Supreme Tribunal were unanimous in their judgment, and held: "Upon the record we are brought to the conclusion that the said convention of representatives of German lodges held in Indianapolis, Ind., June 12 and 13, 1893, was convened in a spirit of rebellion to the Supreme Lodge and its duly constituted officers, and that such spirit inspired its proceedings; that it was made a permanent organization under the name of the 'National Convention of German Lodges, Knights of Pythias,' of the United States, with all the machinery of a perfectly organized institution, for the very purpose of resisting to the uttermost, through all the civil courts of the land to the one of last resort, the enactments and authority of the Supreme Lodge; that the defendant not only recognized, but affiliated with, said organization, and accepted the position of chairman of its executive board (which was practically the organization itself), and actively co-operated with it in setting at defiance the authority of the Supreme Lodge, and thereby violated the obligations by which he was bound as a Knight of Pythias. He claims (and the record seems to sustain his claim) that he was one of the most conservative of the participants of the Indianapolis convention, and exerted his influence for the furtherance of 'peace and harmony.' We may assume from his subsequent prominent position in the organization that his influence prevailed, and the resolutions which we have quoted were the crystallization of the most moderate counsels. We can only conjecture what were the spirit and sentiments of the extremists with whom the defendant saw fit to cast his lot against the order to which he bound himself by the most solemn obligations. We must also hold that the defendant violated the obligations by which he was bound to the order,

119 F.—43

in that he not only connived at the committing of the secret work of the order in writing and printing, but having it published in a manner not authorized by law, but actively participated in it to the extent of assuring Lange of his moral support and advising him how many copies of the ritual to have printed. We therefore find the defendant guilty of violating his obligations to the order, as set out in the first charge of the complaint, and adjudge that he be suspended from the order for the term of two years. The conclusion hereinabove reached renders it unnecessary to, and we do not, decide the other questions presented by the record in this cause."

The judgment was rendered August 5, 1899. During all the time Wellenvoss paid all the assessments upon his benefit certificate, and continued to pay or tender them until his death, February 16, 1900.

Walter P. Lincoln, for plaintiff in error.

O. A. Wehle, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

In the view that we take of this case it may be conceded that by the law of the order, binding upon the membership, in order to maintain the rights conferred by the insurance certificate, it was necessary to continue membership in good standing in the subordinate lodge of which insured was a member. It may also be granted that the Supreme Tribunal had the right to try Wellenvoss for the offense of which he was convicted, and that it was of sufficient gravity to warrant a suspension from the privileges of the order for the term of two years within the rules and regulations lawfully enacted. It may also be granted that the various acts of incorporation had only the effect to continue the corporate body as a single existence with its laws and regulations in continual force, except as modified from time to time. These questions have been elaborately argued. In our judgment the case may properly turn on the interpretation of the legal effect of the suspension of Wellenvoss on the right of the beneficiary to recover on his certificate. The rights of such organizations as the Knights of Pythias to control their internal management, and determine for themselves who shall be members of the organization, so far as the fraternal and social features are concerned, is not before us in this case. An examination of the adjudicated cases will show the general disposition of the courts to permit to such bodies full liberty to deal with those features of the organization, and to determine, by tribunals of their own, rights and obligations of membership in these secret and fraternal bodies.

We are dealing in this case, not with these social and fraternal rights and obligations, but with contractual rights under a certificate of insurance upon the life of the insured in favor of the beneficiary who brings this action. In this respect these organizations are business corporations. They do not issue policies of insurance strictly speaking, but the benefit certificate is a contract of insurance none the less, and the assessments are levied in lieu of premiums to keep the contract alive. The corporation agrees, in consideration of the payment of the assessments and the fulfillment of the other requirements, to pay a stipulated sum upon the death of the certificate holder to the

beneficiary named. Bac. Ben. Soc. §§ 3–52. We have, then, to deal with a contract of insurance which provided that Wellenvoss should comply with the laws governing the Endowment Rank, in force or enacted after the issuance of the certificate, and maintain good standing under the laws of the society. The regulation under which Wellenvoss was suspended provided for a hearing and a sentence of expulsion or suspension from the order for a definite period. He was convicted of a violation of his obligation to the order in publishing and printing a ritual in an unauthorized manner. The conviction was under authority of section 405 of the Supreme Statutes of 1894, regulating the insurance branch. Under that section his sentence of expulsion or suspension could only be pronounced after due notice and trial. Its provisions were not self-executing, and such as ipso facto avoid the contract of insurance, as does the nonpayment of dues and assessments. Unless the society instituted proceedings which, upon conviction, would terminate the rights of the member, he continues in good standing. Upon the insurance contract the effect of such conviction is to end his right of recovery under his insurance certificate, or to suspend it, if suspension is the sentence imposed. In other words, it works a forfeiture of his right of insurance in whole or during the period of suspension. Conceding the right of the society to pass a judgment of this character, which shall work a forfeiture of the contract of insurance, as well as terminate the social and fraternal rights, of the member, are there no limitations upon the exercise of this right? Forfeitures are not favored in the law, and he who would insist upon the exercise of the right must act in strict accordance with the terms of the contract which gives the privilege. It has been repeatedly held in ordinary contracts of insurance that the receipt of a premium after the accruing of a cause of forfeiture of which the company has knowledge is a waiver of the right to insist upon it. Insurance Co. v. Raddin, 120 U. S. 196, 7 Sup. Ct. 500, 30 L. Ed. 644. We perceive no good reason why the general principles of the law governing forfeiture should not apply to the insurance contracts of benefit associations. Bac. Ben. Soc. § 431. In Stylow v. Insurance Co., 69 Wis. 224, 34 N. W. 151, 2 Am. St. Rep. 738, Judge Taylor, speaking for the court, says:

"Where no fraud has been practiced by the insured in concealing his state of health at the time the payments are made, and the company receives such payments out of time, when it might refuse payment and declare the insurance forfeited, it cannot accept the money, and keep it, and still insist upon a forfeiture."

In Modern Woodmen of America v. Jameson, 48 Kan. 718, 30 Pac. 460, it was held that the forfeiture of such contracts was not to be favored.

In Supreme Lodge v. Kalinski, 163 U. S. 289, 16 Sup. Ct. 1047, 41 L. Ed. 163, the court said:

"Aside from this, the continued receipt of assessments upon Kalinski's certificate up to the day of his death was a waiver of any technical forfeiture of the certificate by reason of the nonpayment of the lodge dues. Granting that the continued receipt of premiums or assessments, after a forfeiture has occurred, will only be construed as a waiver when the facts constituting a forfeiture are known to the company (Insurance Co. v. Wolff, 95 U. S. 326,

24 L. Ed. 387; Bennecke v. Insurance Co., 105 U. S. 355, 26 L. Ed. 990), this is true only of such facts as are peculiarly within the knowledge of the assured. If the company ought to have known the facts, or with proper attention to its business would have been apprised of them, it has no right to set up its ignorance as an excuse."

These contracts are relied upon as a means of providing for wife and children. In many of these societies only such as are near in relation or kinship can be beneficiaries. If the right to enforce them is to be taken away, good faith requires such action to be taken with reasonable promptness, that the insured may not, by the failure of the society to assert the right, be lulled into assurance that the fault is condoned, so far, at least, as his insurance is concerned, and the sum intended will be available to his beneficiaries in the event of his death. If this is not law, such associations, with the full knowledge that a cause of forfeiture has arisen, may go on indefinitely levying and collecting assessments, until the assured by reason of age or disease can no longer procure a contract of insurance in favor of those who have a natural claim upon him for such provision. While these societies are peculiar in their organization, and are conceded the fullest right to control their membership and regulate for themselves their internal affairs, as insurance companies we perceive no reason why they should not be held to act upon those principles of equity and fair dealing which the law requires of other companies whose business is that of insurance. Nor is this view, so entirely just in itself, lacking authority for its support.

In Nib. Ben. Soc. (2d Ed.) § 565, the author says:

"Knowledge on the part of the society of a breach of one of the conditions of the contract by the member, and the subsequent collection of assessments, is a waiver of the right to forfeit the contract for that cause."

In Bac. Ben. Soc. § 431, the rule is thus stated:

"But it seems that good faith would require the company, when it becomes aware of a right of forfeiture, to avail itself of it within a reasonable time, and if, after such knowledge, it collects a premium, it should be held to have waived forfeiture."

This seems to be a reasonable statement of the rule. Applying it to the facts in this case, what is the result? Let it be assumed that Wellenvoss, by his participation in the movement of June, 1893, had so far violated the obligations of the order, in participating in and directing the movement to print the ritual in defiance of the order of the duly constituted authorities of the society, as to justify proceedings for his expulsion or suspension, and the consequent loss of his insurance, no such action was taken. The first action of the association was in 1894, when the report of the supreme chancellor was filed. The recommendation of that officer was that steps be taken for the expulsion or suspension of the offending officers from further membership in the Grand Lodge. No steps were then taken to expel him from the order or suspend his membership, and none were suggested. In 1896, when the report of the past supreme chancellor was made who had investigated the conduct of the recalcitrant officers, his recommendation as to Wellenvoss was that he be suspended from the order, and his name be erased from the membership of the Supreme Lodge. Wellen-

voss' name was stricken from the list of past grand chancellors.   No proceedings were then instituted to expel him from the order.   From this decision Wellenvoss appealed to the Supreme Tribunal, and that body in 1898 restored his name to the roll of past grand chancellors. Upon hearing of this decision, upon the motion of certain members of the Supreme Lodge, it was ordered that charges be filed before the Supreme Tribunal, which resulted in the conviction of Wellenvoss of violation of his obligations to the order in participating in the movement for the German ritual in 1893, and his suspension for two years from the order, with the consequent forfeiture for that period of all rights under his insurance certificate.   During this suspension, and within a few months, Wellenvoss died.   He was sick with a fatal disease when he was suspended.   During all these years, and until official notice of his suspension, the society continued to receive his assessments.   When suspended, he was no longer a fit subject for insurance.   He could not pass a physical examination.   He was likely to soon pass away, and did die long before the period of his suspension had passed.   Not only had the society failed to take any action looking to suspension or expulsion for these five years, but it received his assessments for that entire period.   It sought to punish him for the offense committed by striking his name from the list of past grand chancellors, and it was only when this action was reversed by the Supreme Tribunal that the proceeding was instituted which resulted in his suspension.   It may be true that no statute of limitations would prevent the society from ridding itself of undesirable members, and we are not here dealing with the right of the society to exclude a member from its social and fraternal privileges.   We have before us a contract of insurance, which, assuming it to be subject to forfeiture, was so because of facts known to the society for five years without effectual steps to avail itself of the right, receiving payment upon it periodically, and declaring a forfeiture after the assured had reached a state of health preventing the purchase of other insurance.   Upon the plainest principles of justice and settled law applicable to such a situation, we think the right of forfeiture, if it existed, is waived as against the beneficiary.

It is urged that Wellenvoss should have sought a remedy within the society for his suspension, and that class of cases is cited which hold that a member of a fraternal organization who claims to have been wrongfully deprived of membership must seek the redress provided for in the order to which he belongs.   If this doctrine can have application to a case like the present, it is to be noted that Wellenvoss was convicted by the highest tribunal of the order.   The judgment was unanimously rendered by that body.   It would have been vain to have filed a petition for rehearing, which was the only recourse left to the assured.   Loubat v. LeRoy, 40 Hun, 546–549.

It is further contended that by the terms of the certificate of insurance Wellenvoss' beneficiary could only recover in the event that he continued in good standing until his death.   It certainly can be no defense to an action on the certificate that the society wrongfully deprived the member of "good standing."   If that be so, the unwarranted action of the society might be made to protect it from just liability.

This would be to permit it to take advantage of its own wrong. Well-envoss did all that he could do to maintain his contract rights by a tender of the assessments after the society refused to receive them.

We find no error in the direction of a verdict for the plaintiff below. Judgment affirmed.