## CALHOUN et al. v. THE MACCABEES.*
### (No. 291–3553.)

(Commission of Appeals of Texas, Section B.
May 17, 1922.)

**1. Insurance ⬦755(2)—Officers of supreme lodge acting within scope of authority can waive by-laws.**

Notwithstanding Rev. St. art. 4847, providing that subordinate bodies and officers of fraternal beneficiary associations cannot waive the laws and contracts of the association, the supreme lodge itself, or its officers, acting within the scope of their official duties, have power to bind in that regard, and the general rules applicable to waiver and estoppel apply to their acts the same as to the acts of other corporations or individuals and their duly authorized agents.

**2. Insurance ⬦695—General rules of agency apply to fraternal beneficiary associations.**

The general principles of agency apply to fraternal beneficiary associations so that they are bound by the acts of a local body or officer to whom some duty has been delegated, within the scope of the delegated duty, and are charged with knowledge of the acts of such agent within his official duties, and knowledge acquired by him in such duties is imputed to them.

**3. Insurance ⬦755(1)—Unequivocal act inconsistent with forfeiture, committed with knowledge of facts, waives forfeiture.**

Where a fraternal beneficiary association has actual knowledge of the existence of facts which constitute a forfeiture of the policy or is legally charged with such knowledge, any unequivocal act done after the forfeiture has become absolute which recognizes the continued existence of the certificate or policy or which is wholly inconsistent with the forfeiture, will constitute a waiver thereof.

**4. Insurance ⬦755(3)—Acceptance of later assessments waives forfeiture.**

The acceptance of assessments accruing after a certificate in a fraternal benefit association has been forfeited is inconsistent with the forfeiture, and amounts to a waiver thereof.

**5. Insurance ⬦753(1)—Payment by collector for member is valid.**

The payment of an assessment or dues to a benefit society by a collector for a member is valid and sufficient when made in good faith and without intent to defraud or injure the society.

**6. Insurance ⬦755(3)—Acceptance by supreme lodge of payment advanced by collector held waiver of forfeiture.**

Where a member of fraternal benefit association was in arrears for assessments, the acceptance by the supreme lodge of the payment of a subsequent assessment by the record keeper of the local lodge for the member, and the crediting of such assessment to the member's account, was an act by the supreme lodge which waived the forfeiture for nonpayment of the preceding assessments.

**7. Insurance ⬦755(3)—Association is charged in law with what records show or ought to show.**

A fraternal benefit association is charged as matter of law with knowledge of what its records showed, or ought to show, after the payment of previous assessments by a member.

**8. Insurance ⬦753(1)—Payment ⬦38(1)—Collector of assessments cannot apply payment of assessment to debt to him from insured; debtor may direct application of payments.**

A collector of assessments for a fraternal benefit association, who had previously advanced to a member the money necessary to pay an assessment, could not apply the amount paid him by the beneficiary under the certificate to cover future assessments to the repayment of the member's debt to him, under the well-established rule that a debtor in making a payment to a creditor to whom he owes more than one debt may direct its application.

**9. Principal and agent ⬦105(10)—Agent cannot pay debt to himself from money received for principal.**

An agent has no right to pay a debt due to himself with money received from the debtor for his principal.

**10. Insurance ⬦756(1)—Waiver prevents future forfeiture for same default without notice to insured.**

Notwithstanding a waiver of forfeiture of a fraternal benefit certificate for nonpayment of an assessment, the right of an association to collect the assessments and to enforce such collection by forfeiture continues, but after such waiver it can only be revived by notice to the certificate holder, coupled with a reasonable opportunity to discharge the delinquent amounts.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by Katy Calhoun and her husband against The Maccabees. Judgment for defendant was affirmed by the Court of Civil Appeals (225 S. W. 95), and plaintiffs bring error. Judgment of the district court and Court of Civil Appeals reversed, and judgment rendered for plaintiffs.

Charles Murphy and Wood, Barkley & King, all of Houston, for plaintiffs in error.

Hunt & Teagle, of Houston, for defendant in error.

McCLENDON, P. J. This was a suit by Katy Calhoun, joined pro forma by her husband, against the Maccabees, a fraternal insurance order doing business in Texas, to recover the amount of a life certificate for the sum of $1,000, of which she was beneficiary, issued to William H. Boyle, her brother, who died some time during the month of June, 1918, in France, while a member of the United States Expeditionary Army in

the late war. The trial court denied recovery upon the ground that Boyle was in arrears for dues and assessments on March 1, 1918, and had been legally suspended from the order, and his certificate canceled. The Court of Civil Appeals affirmed this judgment. 225 S. W. 95.

There is no statement of facts; but the findings and conclusions of the judge before whom the case was tried without a jury give a full statement of the condition of Boyle's account with the Supreme Tent and Local Tent of the order. Briefly stated, these findings and conclusions show the following:

The order was governed by a central body known as "Supreme Tent," which operated through local lodges known as "local tents." Dues and assessments both to the Supreme and local tents were collected by the secretary of the latter, whose title was "record keeper." Boyle was admitted to membership and issued his life certificate, about October 27, 1916. The monthly dues and assessments were as follows: $1.20 "life benefit," and 10 cents "per capita tax," which went to the Supreme Tent, and 35 cents "local dues," which went to the local tent. The local tent of which Boyle was a member was situated at Houston, Tex., and Sol Z. Gordan was its record keeper. The laws of the order denied payment of benefit certificates where death occurred while the member was engaged in war, insurrection, mob, or riot; but—

the Supreme Tent of the Maccabees sometime during the year 1917 levied a per capita tax of $1 per annum on each and every member to pay the increased loss resulting from the death of members of said order engaged in the military service of the United States.

Boyle did not pay this war assessment for either 1917 or 1918, but all monthly assessments, both to the Supreme and local tents, were paid by or for him, and received and accepted by the Supreme and local tents for every month during his membership up to and including January, 1918, with the exception of one month during 1917. Just which month is not clear. The laws of the order required assessments for each month to be paid during the month for which they were levied, and failure to do so automatically voided the certificate. A number of assessments for 1916 and 1917 were not paid during the particular month for which they were levied, but were delayed from a few days to several weeks, but all of these payments were received and accepted both by the Local and Supreme Tents, and Boyle was held in good standing by both tents until he was suspended between the 1st and 5th of March, 1918, on the ground of having failed to pay his February, 1918, assessments. Gordan was personally acquainted with Boyle, and prior to January, 1918, had personally advanced a number of his assessments for him. This, however, was under some private arrangement between Gordan and Boyle and neither the Local nor the Supreme Tent was a party to or had knowledge of it. The assessment for January, 1918, was on January 5, 1918, paid by Gordan under this arrangement, and was received and accepted as discharging Boyle's obligations to the Local and Supreme Tents by each of those tents. For the convenience of the members of the order Gordan had an arrangement by which he left receipts for monthly dues and assessments at the jewelry store of Otto & Bammel in the city of Houston, who collected the amounts covered by the receipts, delivered the receipts to the members, and turned over the collection to Gordan. Under this arrangement either Mrs. Calhoun or her husband paid the dues and assessments to Otto & Bammel on the following dates: February 5, March 5, April 10, May 21, and June 15, 1918, for those respective months, and these amounts were duly transmitted to Gordan. Gordan, however, instead of passing the amounts due the local tent into the local treasury and transmitting those due the Supreme Tent to it, appropriated the payment of February 5, 1918, to his own use to reimburse himself for the January assessments and dues which he had paid from his own funds. There is no intimation in the record that this was done with the knowledge or consent of Mrs. Calhoun, her husband, or of Boyle. Nor is there any intimation that Boyle was suspended for nonpayment of the January, 1918, dues and assessments, or that he was not then in good standing in the order. We might add that the laws of the Supreme Tent denied authority to the local tent and its officers to waive any of the provisions of its laws.

[1] We have a statute (R. S. art. 4847) to the effect that the subordinate bodies and officers of fraternal beneficiary associations shall not have the power to waive provisions of the laws and contracts of the association, and making such laws and contracts binding on the members. And we may assume, for the purposes of this case, that neither the local tent nor its record keeper, Gordan, had authority to effect a waiver of any forfeiture of the certificate, either past or prospective, so as to bind the Supreme Tent.

It cannot be questioned, however, that the Supreme Tent itself or its officers acting within the scope of their official duties, had the power to bind the Supreme Tent in this regard. The general rules applicable to waiver and estoppel apply to their acts in the same manner and with the same effect that they apply to the acts of other corporations or individuals and their duly authorized agents. This principle is now firmly established. Joyce on Insurance (2d Ed.) vol. 1, § 344e; 29 Cyc. pp. 66, 67.

[2] It is also well established that the general principles of the law of agency apply to these associations in like manner as to other associations and individuals. Where, therefore, the association has delegated to a local

body or officer some duty to be performed for the association, the latter is bound by the acts of the agent within the scope of the delegated duties, upon the principle that the acts of the agent within the line of his delegated duties are, as a matter of law, the acts of the principal. The principal is also charged, as a matter of law, with knowledge of the acts of the agent within his official duties; and knowledge or notice acquired by the agent in the performance of those duties is, as a matter of law, imputed to the principal. 29 Cyc. p. 42.

These questions were very thoroughly gone into in an elaborate opinion by the Supreme Court of the United States in a case in which it was sought to hold the local secretary the agent of the certificate holder in the matter of collecting and transmitting to the central body assessments and dues. Supreme Lodge, K. of P., v. Withers, 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762. In that case the Supreme Lodge had by express law provided that the local lodges and officers should be the agents of the members and not of the Supreme Lodge. The holding in that case was to the effect that:

"The position of the secretary must be determined by his actual power and authority, and not by the name which the defendant chooses to give him. To invest him with the duties of an agent, and to deny his agency, is a mere juggling with words. Defendant cannot thus play fast and loose with its own subordinates. Upon its theory the policy holders had absolutely no protection. They were bound to make their monthly payments to the secretary of the section, who was bound to remit them to the board of control, but they could not compel him to remit, and were thus completely at his mercy. * * *

"It could not thus clothe the secretaries of the sections with the powers of agents by authorizing them to receive monthly payments and instructing them to account for and remit them to the Supreme Lodge at Chicago, and in the same breath deny that they were agents at all. The very definition of an agent, given by Bouvier, as 'one who undertakes to transact some business, or manage some affair, for another, by the authority and on account of the latter, and to render an account of it' presupposes that the acts done by the agent shall be done in the interest of the principal, and that he shall receive his instructions from him. In this case the agent received his instructions from the Supreme Lodge, and his actions were, at least, as much for the convenience of the lodge as for that of the insured. If the Supreme Lodge intrusted Chadwick with a certain authority, it stands in no position to deny that he was its agent within the scope of that authority.

"The reports are by no means barren of cases turning upon the proper construction of this so-called 'agency clause,' under which the defendant seeks to shift its responsibility upon the insured for the neglect of Chadwick to remit on the proper day. In some jurisdictions it is held to be practically void and of no effect; in others, it is looked upon as a species of wild animal, lying in wait and ready to spring upon the unwary policy holder, and in all, it is eyed with suspicion and construed with great strictness. We think it should not be given effect when manifestly contrary to the facts of the case, or opposed to the interests of justice. Wherever the agency clause is inconsistent with the other clauses of the policy, conferring power and authority upon the agent, he is treated as the agent of the company rather than of the policy holder."

Upon this same principle it was held in Sovereign Camp v. Putnam (Tex. Civ. App.) 206 S. W. 970, and Sovereign Camp, W. O. W., v. Miller (Tex. Civ. App.) 220 S. W. 635, that where the local secretary was invested with the duty to collect assessments, and members were required to give notice to him of their engaging in prohibited occupations, which required additional assessments, failure to pay which avoided the certificate, collection by the local secretary of the regular assessments only, after notice to, or knowledge by him of the member's engaging in such prohibited occupation, constituted a waiver of the forfeiture by reason of failure to pay the additional assessments, even though the association and its general officers were ignorant of the fact that the member was engaged in a prohibited occupation. In the Putnam Case the statute above mentioned is alluded to.

[3] Upon the subject of what acts or conduct, other than an express agreement or declaration to that effect, may constitute waiver of a forfeiture already accrued, there is a large volume of adjudicated cases, which, as might be reasonably expected, furnish in some instances conflicting lines of decision. But, aside from specific questions upon which the courts may not be in entire accord, it is quite generally recognized that where the association or corporation has actual knowledge of the existence of facts which constitute a forfeiture of the certificate or policy, or where it is legally charged with such knowledge, any unequivocal act done after the forfeiture has become absolute which recognizes the continued existence of the certificate or policy, or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof. Ins. Ass'n v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625; Underwood v. Ins. Co., 108 Tex. 381, 194 S. W. 585; Roberts v. Ins. Co. (Tex. Com. App.) 221 S. W. 268; 29 Cyc. p. 193, and note 83; Supreme Lodge v. Wollenvoss, 119 Fed. 671, 56 C. C. A. 287. See, also, Ann. Cas. 1914C, note, p. 437 et seq.

The opinion in the case last cited was delivered by Judge Day while a member of the United States Circuit Court of Appeals. He says:

"Conceding the right of the society to pass a judgment of this character, which shall work a forfeiture of the contract of insurance, as well as terminate the social and fraternal rights, of the member, are there no limitations

upon the exercise of this right? Forfeitures are not favored in the law, and he who would insist upon the exercise of the right must act in strict accordance with the terms of the contract which gives the privilege. It has been repeatedly held in ordinary contracts of insurance that the receipt of a premium after the accruing of a cause of forfeiture of which the company has knowledge is a waiver of the right to insist upon it. Insurance Co. v. Raddin, 120 U. S. 196, 7 Sup. Ct. 500, 30 L. Ed. 644. We perceive no good reason why the general principles of the law governing forfeiture should not apply to the insurance contracts of benefit associations. Bac. Ben. Soc. § 431. In Stylow v. Insurance Co., 69 Wis. 224, 34 N. W. 151, 2 Am. St. Rep. 738, Judge Taylor, speaking for the court, says: 'Where no fraud has been practiced by the insured in concealing his state of health at the time the payments are made, and the company receives such payments out of time, when it might refuse payment and declare the insurance forfeited, it cannot accept the money, and keep it, and still insist upon a forfeiture.'

"In Modern Woodmen of America v. Jameson, 48 Kan. 718, 30 Pac. 460, it was held that the forfeiture of such contracts was not to be favored.

"In Supreme Lodge v. Kalinski, 163 U. S. 289, 16 Sup. Ct. 1047, 41 L. Ed. 163, the court said: 'Aside from this, the continued receipt of assessments upon Kalinski's certificate up to the day of his death was a waiver of any technical forfeiture of the certificate by reason of the nonpayment of the lodge dues. Granting that the continued receipt of premiums or assessments, after a forfeiture has occurred will only be construed as a waiver when the facts constituting a forfeiture are known to the company (Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387; Bennecke v. Insurance Co., 105 U. S. 355, 26 L. Ed. 990), this is true only of such facts as are peculiarly within the knowledge of the assured. If the company ought to have known the facts, or with proper attention to its business would have been apprised of them, it has no right to set up its ignorance as an excuse.'

"These contracts are relied upon as a means of providing for wife and children. In many of these societies only such as are near in relation or kinship can be beneficiaries. If the right to enforce them is to be taken away, good faith requires such action to be taken with reasonable promptness, that the insured may not, by the failure of the society to assert the right, be lulled into assurance that the fault is condoned, so far, at least, as his insurance is concerned, and the sum intended will be available to his beneficiaries in the event of his death. If this is not law, such associations, with the full knowledge that a cause of forfeiture has arisen, may go on indefinitely levying and collecting assessments, until the assured by reason of age or disease can no longer procure a contract of insurance in favor of those who have a natural claim upon him for such provision. While these societies are peculiar in their organization, and are conceded the fullest right to control their membership and regulate for themselves their internal affairs, as insurance companies we perceive no reason why they should not be held to act upon those principles of equity and fair dealing which the law requires of other companies whose business is that of insurance. Nor is this view, so entirely just in itself, lacking authority for its support.

"In Nib. Ben. Soc. (2d Ed.) § 565, the author says: 'Knowledge on the part of the society of a breach of one of the conditions of the contract by the member, and the subsequent collection of assessments, is a waiver of the right to forfeit the contract for that cause.'

"In Bac. Ben. Soc. § 431, the rule is thus stated: 'But it seems that good faith would require the company, when it becomes aware of a right of forfeiture, to avail itself of it within a reasonable time, and if, after such knowledge, it collects a premium, it should be held to have waived forfeiture.'

"This seems to be a reasonable statement of the rule."

[4] There could hardly be an act which would be more inconsistent with a forfeiture than the acceptance of assessments. The very right to demand and receive them is dependent upon the continued existence of the policy. To entitle the association to them, the forfeiture would have to be waived, set aside, or disregarded. The association could not collect assessments to which it would not be entitled if the certificate be forfeited, and at the same time deny its full obligation under the certificate. Insurance Co. v. Hanna, 81 Tex. 487, 17 S. W. 35; Supreme Ruling v. Hoskins (Tex. Civ. App.) 171 S. W. 812; Sov. Camp v. Putnam, and Sov. Camp v. Miller, above; 19 Ruling Case Law, p. 1276 et seq.; vol. 2, First Decennial Digest, Insurance, § 755 (3); Ins. Co. v. Raddin, 120 U. S. 196, 7 Sup. Ct. 500, 30 L. Ed. 644.

[5] That the payment of an assessment or dues to a benefit society by a collector for a member is valid and sufficient when made in good faith and without intent to defraud or injure the society is established by a number of adjudicated cases. Walker v. United Order, 212 Mass. 289, 98 N. E. 1039, Ann. Cas. 1913D, 345, and note at page 347; 19 Ruling Case Law, p. 1273.

[6] If these principles are applied to the facts of this case, as found by the trial court, then Boyle's certificate was kept in force during February, 1918, by virtue of Gordan's payment for Boyle of his January dues and assessments. No question is raised as to that particular payment. When that assessment went to the proper officer of the Supreme Tent, and was duly credited to Boyle's January, 1918, account, such act on the part of the supreme officer was the act of the association itself, and constituted a waiver of any forfeiture that had then accrued by reason of delinquency in payment of war assessments or of the month in 1917 for which there appears to be no credit, regardless of the question of Gordan's agency.

[7] The association was charged as a matter of law with knowledge of what its records showed or ought to show. The total

failure to pay prior assessments could not fail to appear from those records, if they were properly kept, and there is no suggestion that they were not so kept.

[8] The certificate being in force during February, 1918, by virtue of the January payment, it was thereafter kept in force until Boyle's death by the payments made by Mr. and Mrs. Calhoun for the months of February to June, inclusive, regardless of what Gordan may have done with the money after it was paid over to him. That he was the duly authorized agent of the association for collecting its assessments there can be no question. The fact that Boyle may have owed Gordan personally for the January assessment did not give the latter the right to apply to his own debt money paid to him in his capacity as agent for the association.

"No proposition of law is more universally acknowledged than that a debtor, in making a payment to a creditor to whom he owes more than one debt, may direct its application." 96 Am. St. Rep. 46, note.

[9] It follows as a necessary corollary that an agent would not have the right to pay his own debt with money received by him for his principal. Such appropriation by Gordan was ineffectual; and the February and subsequent payments must be applied to the assessments and dues for those months. In law Gordan had no right to hold these payments other than for his principal and as credits upon the particular items for which they were paid to him.

[10] The continuing right of defendant in error to collect past due assessments, and to enforce such collection by forfeiting the certificate, may be conceded. Our holding is only to the effect that when once this forfeiture, or right to forfeit is waived it can only be revived by notice to the certificate holder or his accredited agent, coupled with a reasonable opportunity to discharge the amounts delinquent. The promptness with which Mr. and Mrs. Calhoun met every payment after January evidences a purpose on their part to do all that was necessary to keep the certificate in force and prevent a forfeiture. We need give no expression of view upon the moral or ethical aspect of the action of Gordan in appropriating the February payment, or of the subsequent action of defendant in error in ratifying such conduct by urging it as a defense to this suit. What we have said concerning the legal rights of the parties is sufficient, we think, to dispose of the contested issues in the case.

The trial court having found that the order had not been paid the two war assessments and one month's assessment in 1917, we think these amounts, which aggregate $3.65, should be deducted from the amount of the certifi-

cate, and Mrs. Calhoun given judgment for the balance, with interest.

We therefore conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and judgment rendered in favor of plaintiff in error, Katy Calhoun, against defendant in error, for the sum of $996.35, with interest thereon at 6 per cent. per annum from July 1, 1918, and all costs of all courts.

CURETON, C. J. It is ordered by the Supreme Court that the judgments of the district court and of the Court of Civil Appeals be reversed, and that judgment be rendered in favor of plaintiff in error against the defendant in error for $996.35, with interest at 6 per cent. per annum from July 1, 1918, and all costs of the suit.