## SOVEREIGN CAMP, W. O. W., v. HINES.
### (No. 207.)

(Court. of Civil Appeals of Texas. Waco.
April 16, 1925. Rehearing Denied
May 28, 1925.)

**1. Insurance ⚖➾763—Bound by reinstatement of member by local camp, though in violation of by-laws.**

Although, under Rev. St. art. 4847, fraternal benefit society could withhold from local camp and officers powers to waive any of its by-laws, and by-laws prescribed conditions of reinstatement, nevertheless, local officers being agents of society in receiving payment of arrearages and reinstating members, reinstatement after lapse, without compliance with requirements, held binding on company, which did not repudiate reinstatement until notice of death.

**2. Insurance ⚖➾697—Knowledge of local camp or officer imputed to association.**

Notice to or knowledge of local camp or its officer in transaction of beneficiary association's business will be imputed to association, and latter will be bound by such knowledge.

**3. Insurance ⚖➾763—Requirement that reinstated member remain in good health for 30 days held waived.**

Where local camp of fraternal beneficiary association and reinstating officer knew that member was ill and thereby waived requirement of by-laws as to health, requirement that he remain in good health for 30 days after reinstatement was also necessarily waived.

**4. Insurance ⚖➾799—Interest charged on money due beneficiary of deceased member from time of proof of loss, and not death.**

In view of Rev. St. art. 4973, declaring interest to be compensation allowed for retention of money, beneficial association, which had contested claim of beneficiary of member, held required to pay interest only from time of proof of loss, and not from death of member.

Appeal from District Court, Madison County; Carl T. Harper, Judge.

Suit by Mrs. R. Mattie Hines against the Sovereign Camp, Woodmen of the World. Judgment for plaintiff, and defendant appeals. Reformed and affirmed.

De E. Bradshaw, of Omaha, Neb., and Wolters, Storey, Blanchard & Wolters, of Houston, for appellant.

A. H. Menefee, of Madisonville, for appellee.

GALLAGHER, C. J. This suit was instituted by. appellee, Mrs. R. Mattie Hines, against appellant, Sovereign Camp, Woodmen of the World, to recover the sum of $1,100 on a benefit certificate issued by appellant to her deceased husband, John Willis Hines. The parties will be designated as in the trial court. It was agreed on the trial of the case that, in event plaintiff was entitled to recover, $880 was the sum properly recoverable.

Defendant is a fraternal beneficiary association, duly incorporated. On March 3, 1911, it issued to said John Willis Hines a beneficiary certificate on his life, in which certificate plaintiff was named as beneficiary. Hines, hereinafter called insured, was a member of the local camp of said order located at Midway, Tex. R. F. Wakefield was clerk of said local camp. Other material facts will appear in the findings of fact filed by the trial court and in recitals herein based on the statement of facts included in the record on this appeal. The case was tried by the court without a jury. Judgment was rendered in favor of the plaintiff against the defendant for the sum of $880 with interest and costs of suit. The court, on request of plaintiff, filed his findings of fact and conclusions of law. Said findings of fact are as follows:

"The court finds that John Willis Hines was a member of the defendant company for a period of 9 years prior to his death, and that all dues and assessments required of him to be paid by said company had been paid at the time of his death, March 11, 1920; that Hines held policy for $1,000 and $100 monument fee from defendant company; that the Sovereign Camp, W. O. W., is a corporation and fraternal beneficiary insurance association which conducts its business through the organization and operation of local lodges and camps throughout the United States; that it is the local lodge through which it operates, that it is the local lodge to which its members belong and to which its members pay their dues and assessments; and that its members depend upon the local camps and its officers and upon them alone for the conduct and mangement of defendant's business, in so far as their individual status in defendant company is concerned. I find that, under the certificate of insurance, the constitution, and by-laws of the defendant company, dues were required to be paid monthly during each month and, upon failure to do so, the member's certificate of insurance was forfeited or suspended; that the deceased, J. W. Hines, failed to pay his monthly dues for the months of January and February, 1920, prior to his death in March, 1920; that he paid up his dues for the months of January, February, and March, 1920, on the 8th day of March, 1920; that the clerk of the local camp at Midway, R. F. Wakefield, accepted the dues for said 3 months, issued his official receipt therefor, and marked the receipt 'reinstated,' and also entered the name of the deceased on his books as reinstated at the time, and that it was the intention of the local clerk to reinstate the insured, and reported him as reinstated in his regular monthly report to the Sovereign Camp at Omaha, Neb., for the month of March, 1920; that the defendant company accepted his dues, and retained the same until notice of the death of deceased reached the home office some 2 or 3 weeks later. The court further finds that the clerk's report for January, 1920, reported the deceased as suspended, and

that his report for February, 1920, made no reference to deceased; that deceased was sick at the time he tendered his dues on March 8th, which was known to the local clerk at the time and also known to the local camp physician, Dr. L. Corley.

"The court finds that the constitution and by-laws of defendant company provide that, in the event a member is suspended for the non-payment of dues for as long a period as 10 days and less than 3 months, he can become reinstated by making written application to the local camp stating that he is in good health, which certificate must be witnessed, and that the suspended member, in addition, must pay up all arrearages and remain in good health for 30 days after making application for reinstatement; that no report of a member's reinstatement is made by the clerk of the local camp to the Sovereign Camp, where such member has been suspended for a less period than 3 months, except to report such member as reinstated, and that neither the constitution and laws nor the certificate of insurance require any notice of the manner and method of reinstating a member to be made to the home office where such member has been suspended for less than 3 months as in the present case; that a custom and practice of many years duration had grown up in defendant's local camp of reinstating members who had become delinquent for a less period than 3 months by accepting dues for all arrearages, and that the certificate of good health was not required; that this custom was well known among the membership of the lodge, was known to the insured at the time of his reinstatement, and relied upon by him at the time in seeking reinstatement; that for many years prior to insured's death the matter of reinstatement was left largely to the management and discretion of the local camp, its officers, and agents, where such member was delinquent with his dues for a less period than 3 months; that such practice had been acquiesced in by the defendant company; that the defendant company accepted and retained the dues of the deceased, with full knowledge of the fact that he had before been suspended, which fact afforded defendant company an opportunity to investigate and inquire into the manner of his reinstatement and whether he had complied with the rules of the company. The court finds that R. F. Wakefield was the trusted and bonded officer and agent of defendant company, authorized by its own written laws and sanctioned by long custom with the duty of collecting dues from its members, keeping the local camp books, and was, in fact, the agent and representative of defendant company in the management of the affairs ordinarily intrusted to its local camps and its officers. The court finds that insured did not present a certificate of good health for reinstatement, and did not remain in good health for 30 days after his reinstatement, as required under the constitution and laws of defendant company."

None of said several findings of fact are assailed as without support in the evidence by any assignment of error. We have, however, examined the statement of facts in connection therewith, and find that the material findings upon which this opinion is based are not without support in the evidence.

Defendant contends that the court erred in rendering judgment against it and in favor of the plaintiff. This contention is presented in various forms by eight of defendant's nine assignments of error. It is based on the fact that there was not a literal compliance with the provisions of its by-laws with reference to the reinstatement of the insured. Said by-laws, so far as pertinent to said contention, are as follows:

"Sec. 65. No suspended member shall be reinstated whose health is at the time impaired or becomes impaired within 30 days after any attempted reinstatement. * * *

"Sec. 66. (a) * * *

"(b) After the expiration of 10 days and within 3 months from date of suspension of a suspended member, to reinstate he must pay to the clerk of his camp all arrearages and dues and deliver to him a written statement and warranty, signed by himself and witnessed that he is in good health at the time and continue in good health for 30 days thereafter * * * as a condition precedent to reinstatement, and waiving all rights hereto if such written statement and warranty be untrue.

"(c) Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time and continue in good health for 30 days thereafter, and if any of the representations or statements made by said applicant are untrue, then said payments shall not cause his reinstatement nor operate as a waiver of the above conditions."

"Sec. 82. (a) No officer, employee or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution or these laws, *nor shall any custom on the part of any Camp or any number of camps—with or without the knowledge of any Sovereign officer—have the effect of so changing, modifying, waiving or foregoing such laws or requirements.* * * * (Italics defendant's.)

[1] The findings of fact and the undisputed evidence in the case show that the insured did not, at the time of such payment, deliver to the said clerk of his local camp a written statement and warranty, duly signed, that he was at that time in good health. They also show that the insured was not in good health at the time he paid his arrearages to said clerk and at the time said clerk attempted to reinstate him in the order, and that he did not remain in good health for 30 days thereafter. They further show that he died on the third day after such attempted reinstatement. It was not, however, shown that there was any fraud or concealment on the part of the insured by which the clerk of the local camp was induced to accept said payment and to attempt to reinstate him. The clerk, in fact, knew that the insured was sick at that time. Neither is it shown that there was any collusion between said clerk and the insured. The clerk seems to have acted in good faith, relying on the fact that

the Sovereign Camp had acquiesced in the custom theretofore in vogue with reference to reinstating members of said local camp without requiring evidence of good health at the time.

Defendant undoubtedly had the right to prescribe the terms and conditions on which suspended members of the order might be reinstated and on which beneficiary certificates held by such members should be revived and rendered enforceable. The defendant was authorized by the express terms of article 4847 of our revised statutes to withhold from the local camp and the officers thereof any right, power, or authority to waive any of the provisions of its by-laws as quoted above. There is no proof that the insured had actual knowledge of the contents of such by-laws, but we may assume for the purpose of this case that he was charged with knowledge of the contents of the same. The fact remains, however, that the matter of receiving payment of arrearages and dues for suspended members and reinstating such members was confided to the local camp. No provision was made for such action by defendant. It is true the by-laws prescribed just how and under what conditions this duty should be performed and declared that nothing except a literal compliance with such requirements should effect a reinstatement, but in cases such as this, where reinstatement is sought by the member and attempted by the proper officer of the local camp, a report of the fact of reinstatement, together with the necessary remittance, was all that was required and all that appears to have been contemplated by the defendant. No report of the details of the transaction was provided for and no review of the same by the defendant for the purpose of approving or disapproving such action was provided for or contemplated. In the matter of requiring a member seeking reinstatement to comply with the provisions of the by-laws above quoted and accepting or rejecting the arrearages and dues tendered, the local camp, or its clerk acting for it, was the agent of the defendant. The law applicable to such transactions was discussed in an opinion by the Commission of Appeals of this state in the case of Calhoun v. Maccabees, 241 S. W. 101, 102, 103. The defendant in that case was also a fraternal beneficiary association and its organization embraced a Supreme Tent and local tents, similar to the Sovereign Camp, defendant in this case, and the local camp of which the insured was a member. We quote from the opinion in that case as follows: -

"It cannot be questioned, however, that the Supreme Tent itself, or its officers acting within the scope of their official duties, had the power to bind the Supreme Tent in this regard. The general rules applicable to waiver and estoppel apply to their acts in the same manner and with the same effect that they apply to

273 S.W.—59

the acts of other corporations or individuals and their duly authorized agents. This principle is now firmly established. Joyce on Insurance (2d Ed.) vol. 1, § 344e; 29 Cyc. pp. 66, 67.

"It is also well established that the general principles of the law of agency apply to these associations in like manner as to other associations and individuals. Where, therefore, the association has delegated to a local body, or officer, some duty to be performed for the association, the latter is bound by the acts of the agent within the scope of the delegated duties, upon the principle that the acts of the agent within the line of his delegated duties are, as a matter of law, the acts of the principal. The principal is also charged, as a matter of law, with knowledge of the acts of the agent within his official duties; and knowledge or notice acquired by the agent in the performance of those duties is, as a matter of law, imputed to the principal. 29 Cyc. p. 42."

[2] The law declared in the above quotation is applicable to the facts of this case. The Sovereign Camp, defendant herein, in the matter of requiring compliance with the provisions of its by-laws on the part of the insured, reinstating him in the order, and reviving his beneficiary certificate, was acting through its local agent, the clerk of its local camp. Such local agent was, in such matters, engaged in the discharge of his principal's business. It is true the principal, under the law of agency, has the right to limit the power and authority of his agent and parties, dealing with such agent, knowing such limitations, are bound thereby. We may concede that this principle is applicable in the relations between the Sovereign Camp and local camps, or the clerks thereof, in the matter of reinstating members. Nevertheless notice to or knowledge of the local camp, or its officer, received or acquired in the transaction of matters confided thereto by the defendant, is imputed to the defendant. It was bound by such imputed knowledge, notwithstanding it may not have had or did not have actual knowledge of the situation. This rule of law is applied where the agent is the sole representative of the principal in the transaction, as was the clerk of the local camp in this case, even though his action in the premises is improper or in violation of his instructions. Goldstein v. Union Nat. Bank, 109 Tex. 555, 572, 213 S. W. 584; Calhoun v. Maccabees, supra. When the report of the reinstatement of the insured and the remittance covering his arrearages and current dues were received by the Sovereign Camp, knowledge of the fact that the provisions of its by-laws had not been complied with and that the insured was sick at the time of reinstatement was imputed to it. Notwithstanding such imputed knowledge, it kept the remittance until it was notified of the death of the insured, a space of nearly 2 months from the time of the receipt of the money by the clerk of the

local camp, and some 3 weeks after the same was actually received by it at its home office. Defendant could not, with actual knowledge, have speculated upon the outcome of the sickness of the insured, and have accepted him as a reinstated member if he recovered and lived, and have rejected him only in event he died. Some light on the situation is gained from the fact that another suspended member paid his arrearages and dues during the same 'month as the insured. No certificate of good health was required, and, so far as disclosed, no investigation was made as to the condition of his health by the clerk of the local camp at the time. His reinstatement was reported and his arrearages and dues remitted at the same time as the insured's. No investigation was shown to have been made by the defendant concerning the regularity of his reinstatement or the condition of his health at that time. His reinstatement was never questioned nor his remittance returned. The acceptance by the defendant of the report of the reinstatement of the insured, together with the remittance of arrearages and current charges, with imputed knowledge of his condition at the time, and the retention of such remittance, without inquiry and with tacit approval, was evidence tending to show a waiver of forfeiture. We quote on this point from Calhoun v. Maccabees, supra, as follows:

"Upon the subject of what acts or conduct, other than an express agreement or declaration 'to that effect,' may constitute waiver of a forfeiture already accrued, there is a large volume of adjudicated cases, which, as might be reasonably expected, furnish in some instances conflicting lines of decision. But, aside from specific questions, upon which the courts may not be in entire accord, it is quite generally recognized that where the association or corporation has actual knowledge of the existence of facts which constitute a forfeiture of the certificate or policy, or where it is legally charged with such knowledge, any unequivocal act done after the forfeiture has become absolute which recognizes the continued existence of the certificate or policy, or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof. Insurance Ass'n v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625; Underwood v. Insurance Co., 108 Tex. 381, 194 S. W. 585; Roberts v. Insurance Co. (Tex. Com. App.) 221 S. W. 268; 29 Cyc. p. 193, and note 83; Supreme Lodge v. Wollenvoss, 119 F. 671, 56 C. C. A. 287. See, also, Ann. Cas. 1914C, note, p. 437 et seq. * * *

"There could hardly be an act which would be more inconsistent with a forfeiture than the acceptance of assessments. The very right to demand and receive them is dependent upon the continued existence of the policy. To entitle the association to them the forfeiture would have to be waived, set aside, or disregarded. The association could not collect assessments to which it would not be entitled if the certificate be forfeited, and at the same time deny its full obligation under the certificate. Insurance Co. v. Hanna, 81 Tex. 487, 17 S. W. 35;

Supreme Ruling v. Hoskins (Tex. Civ. App.) 171 S. W. 812; Sov. Camp v. Putnam, and Sov. Camp v. Miller, above [hereinafter cited]; 19 Ruling Case Law, p. 1276 et seq.; 2 First Decennial Digest, Insurance, § 755(3); Insurance Co. v. Raddin, 120 U. S. 196, 7 Sup. Ct. 500, 30 L. Ed. 644."

[3] In support of the judgment rendered, we are required to assume that the trial court found that the defendant had waived a forfeiture of the beneficiary certificate sued on in this case and of any inquiry into the reinstatement of the insured. Nor can defendant predicate any defense on the ground that the insured died within 3 days after such payment and reinstatement. The requirement of the by-laws that the reinstated member shall remain in good health for 30 days after his reinstatement is impossible when such member is not in good health when reinstated. A waiver of his condition of health at the time of reinstatement is necessarily a waiver of the requirement that he remain in good health for 30 days thereafter. The reinstated member cannot "remain" for 30 days in a condition which does not exist at the time of reinstatement. The insured had been a member of the order for 9 years. It does not appear that he was ever before in default in his payments during all that time. His suspension was so recent that under the terms of by-laws 66, subdivision B. he was accorded special facilities and privileges in the matter of reinstatement. The Sovereign Camp had, so far as shown, continually acquiesced in the action of this local camp or its clerk in reinstating such members without inquiry as to the condition of their health at the time. Defendant's contentions that the court erred in rendering judgment for the plaintiff and in not rendering judgment for it are overruled. Calhoun v. Maccabees, supra, and authorities there cited. Supreme Lodge of K. of P. v. Withers, 177 U. S. 260, 20 S. Ct. 611, 44 L. Ed. 762; Sovereign Camp, W. O. W., v. Miller (Tex. Civ. App.) 220 S. W. 635, 637. 638 (writ refused); Sovereign Camp, W. O. W., v. Putnam (Tex. Civ. App.) 206 S. W. 970, 972, 973-975 (writ refused); International Brotherhood v. Duncan (Tex. Civ. App.) 194 S. W. 956; Knights of Pythias v. Bridges, 15 Tex. Civ. App. 196, 39 S. W. 333, 335; Sovereign Camp, W. O. W., v. Carrington, 41 Tex. Civ. App. 29, 90 S. W. 921.

[4] Defendant's remaining assignment of error complains of the action of the trial court in awarding interest on the sum recovered from March 15, 1920. The by-laws provide for the furnishing of proofs of death to the Sovereign Camp. Interest, as here involved, is declared by article 4973 of the Revised Statutes to be the compensation allowed by law for the retention of money. We do not think defendant should be held to have "retained" the amount due on the bene-

ficiary certificate sued on prior to the time it was duly advised of the death of the insured in the manner provided by its by-laws, or until, being advised of such death in some other manner, it denied liability therefor. Proofs of death in this case were received at the home office of defendant on April 30, 1920. Plaintiff offers to remit any interest held to be excessive. We therefore reform the judgment rendered by the trial court, so as to make it bear interest on the recovery of $880 therein awarded from the 30th day of April, 1920. As so reformed, the judgment of the trial court is affirmed.

BARCUS, J., took no part in the decision of this case.