THE ÆTNA LIFE INSURANCE COMPANY V. J. K. P. HANNA ET AL.

No. 7063.

1. **Appearance to Quash Citation.**—Suit was brought against a nonresident insurance company alleged to have an agent within the State. Citation was served by delivery of the citation, etc., to the agent. Appearance was made pleading in abatement that the alleged agent upon whom the service had been made was not its agent. The motion to quash was overruled and exceptions saved. At a subsequent term defendant pleaded to the merits. *Held*, that the appearance attacking the service of citation was such appearance of itself as would give jurisdiction. York v. The State, 73 Texas, 655.

2. **Same—Fact of Agency.**—But the facts, although conflicting, were sufficient to sustain the allegation of agency of the party upon whom service was made.

3. **Habits of Intoxication Defeating Life Insurance Policy—Facts.**—The testimony was conflicting as to the habits of the assured. The defense was after-acquired habit of drunkenness causing death of the assured. The verdict against the insurance company will not be disturbed. See opinion.

4. **Waiver by Collecting Premiums.**—The testimony showed the regular payments of premiums for fourteen years, and including several years after the alleged intemperate habits were formed. The assured was well known in the State. The agent of the insurance company in the State collected the premiums. *Held*, that upon these facts it was not error to submit the issue that by collecting premiums the condition against drunkenness was waived if the fact had existed.

APPEAL from Robertson. Tried below before Hon. W. E. Collard. The opinion states the case.

*Simmons & Crawford*, for appellant.—1. The court erred in overruling defendant's motion to quash citation in this cause, for the reason that J. A. Davis, upon whom citation was served, was not at said time an agent of defendant, and that said service as to this defendant was and is null and void. Jones v. City of Jefferson, 66 Texas, 576; Witt v. Kaufman, 25 Texas Supp., 384; Railway v. McTiegue, 1 Ct. App. C. C., sec. 457; St. Clair v. Cox, 106 U. S., 350; Pennoyer v. Neff, 95 U. S., 723.

Appellant's special appearance for the purpose of objecting to the jurisdiction did not give jurisdiction. Walling v. Beers, 120 Mass.,

548; Harkness v. Hyde, 98 U. S., 476; Wright v. Boynton, 37 N. H., 9, 19.

Pleading to the merits after objection to service was overruled did not give the court jurisdiction. Walling v. Beers, supra; Harkness v. Hyde, supra.

2. When one of the conditions of the policy provides that in case the assured shall become so far intemperate as to impair his health seriously and permanently, the policy shall be void, null, and of no effect, a collection of same can not be enforced after the death of the assured, the weight of the evidence establishing the fact that his health was seriously and permanently impaired by intemperance. Miller v. Ins. Co., 34 Iowa, 222; 5 Bige. on Life and Acc. Ins. Cases, 437; Bliss on Life Ins., secs. 123, 124, 251, 252; Mawry v. Ins. Co., 9 R. I., 346; Rauney v. Ins. Co., U. S. C. C., 1773; Association v. Leflore, 53 Miss., 1; Evans v. Ins. Co., 64 N. Y., 304; Reeve v. Ins. Co., 23 La. Ann., 219; Ins. Co. v. Fay, 22 Mich., 467.

3. Where no evidence is introduced to support a special plea of waiver and estoppel, the trial court should not submit that in issue to the jury in its charge. The charge must conform to the evidence. Railway v. Faber, 63 Texas, 344; Rosenthal v. Middlebrook, 63 Texas, 333; Railway v. Gilmore, 62 Texas, 391; Sayles' Civ. Stats., art. 1317, note 4, and authorities there cited.

4. Where there is no proof that appellant, when it received the annual premiums in 1882, 1883, 1884, and 1885, from J. S. Hanna, knew that he had become so far intemperate as to impair his health seriously and permanently, or to induce delirium tremens, there is no waiver of forfeiture of policy, nor can there be any estoppel. Bige. on Estop., 633–641; Ins. Co. v. Wolf, 95 U. S., 326; Ins. Co. v. Eggleston, 96 U. S., 572; Henry v. Gilliland, 103 Ind., 177, 180; Ins. Co. v. Omerman, 10 N. E. Rep., 225; Cannon v. Cannon, 66 Texas, 682; Finley v. Ins. Co., 30 Pa. St., 311; Forbes v. Ins. Co., 9 Cush., 470; May on Ins., secs. 506, 507; Bliss on Life Ins., secs. 267, 268.

*Scott Field* and *W. O. Campbell*, for appellees.—1. A defendant who files any defensive pleading makes such an appearance as gives the court jurisdiction over his person as fully as would the issuance of proper citation and its proper service within this State. Rev. Stats., art. 1242; York v. The State, 73 Texas, 655.

2. While the evidence shows that assured (J. S. Hanna) was intemperate, it fails to show that he had by intemperance seriously and permanently impaired his health or induced delirium tremens, or that he died from the effect of blood poison caused by intemperance; but the weight of the evidence is to the effect that his mental and physical energies were in no manner impaired by his intemperance; that he was an unusually vigorous and active man for his age (67); and that he died

from apoplexy, with no apparent connection between his death and the excessive use of whisky.

3.   Plaintiffs proved an acceptance by defendant of premiums from the assured after knowledge of the facts avoiding the policy, thereby inducing assured to believe that any forfeiture was waived, and that defendant was thereby estopped to deny its liability.   Evidence supporting this plea was introduced, and the court correctly charged the law of the case.   Bliss on Life Ins., 2 ed., p. 453, and authorities cited in note 1; Id., pp. 311, 344; Day v. Ins. Co., 29 Am. Rep., 696, 702; 27 Am. Rep., 561; Schwarzback v. Prot. Union, 25 W. Va., 622; Osterloh v. Ins. Co., 60 Wis., 126; Ins. Co. v. Ende, 65 Texas, 119.

4.   It is certain that in 1882 the insurance company had full knowledge of the fact of assured's intemperate habits.   This knowledge continued to the year of his death, as evidenced by the notice on the receipts annually given for premiums tendered and received.

HOBBY, PRESIDING JUDGE, *Section A.*—This suit was brought by the appellees, J. K. P. Hanna, Haywood Hanna, Mollie Peters and her husband E. S. Peters, and the remaining children and heirs of J. S. and Martha Hanna, on the 27th day of December, 1886, against the appellant, the Ætna Life Insurance Company, of Hartford, Conn.

The object of the suit was to recover $5000 due on a policy of insurance issued by the company May 27, 1868, on the life of J. S. Hanna, for the benefit of his wife; and in the event of her death before that of the assured the amount was to be paid on his death to appellees, their children.   All the averments are contained in the petition necessary to authorize a recovery.

Service was had on the appellant by serving citation and copy of petition on J. A. Davis, who was alleged to be its agent, and who resided in Parker County, Texas, at the January term, 1887.   At the June term, 1887, the company moved to quash the citation, because Davis was not their agent, the company having none in the State.   It appears from a preliminary statement of facts contained in the record that evidence was heard by the court on this question, and on July 27, 1887, the motion to quash was overruled, and appellant reserved a bill of exceptions in the usual form.

At the June term, 1888, the appellant answered, and specially pleaded that the policy had become null and void, because one of the conditions of forfeiture in the policy was that "If the assured shall become so far intemperate as to seriously and permanently impair his health or induce delirium tremens," it should become null and void; and that the assured had broken this condition, specifically alleging the details of the breach thereof by him.   To this appellees replied that appellant was estopped from setting up said forfeiture, because it had received premiums paid on said policy, with full knowledge of said intemperate habits, etc., and

induced appellees and the assured to believe that it was waived. The trial resulted in a verdict for appellees for $4090.23, on which judgment was entered, and the company has appealed therefrom.

There are but three questions involved in this case. The first is, Did the court err in overruling appellant's motion to quash the citation on the ground that J. A. Davis was not the agent of appellant in this State? as to this policy.

It appears from the record in this cause that the motion to quash the service was made at the June term, 1887, and after hearing the evidence on this question it was overruled by the court, and the appellant reserved his bill of exceptions; and no other proceedings appear to have been had with reference to the case until the June term, 1888, when the appellant filed its answer, consisting of a general denial and special pleas. In view of these facts, in the opinion of the writer it would be a sufficient disposition of the assignment questioning the correctness of the ruling of the court to say that under the authority of York v. The State, 73 Texas, 655, the appellant by its answer submitted itself to the jurisdiction of the court.

The object sought to be accomplished by service of a citation is to compel or secure an appearance in court of the defendant. If the defendant answers, this, under the statute, "constitutes an appearance of the defendant, so as to dispose of the necessity for the issuance or service of citation on him." Rev. Stats., art. 1242.

Article 1243 of the Revised Statutes provides in substance that if the citation be quashed on defendant's motion it operates as an appearance at the next succeeding term. An important change was introduced by this statute. It gave to the special appearance of the defendant made in this motion attacking the service the same effect that would have followed from a general appearance by the defendant prior to its enactment in 1879. York v. The State, supra. The defendant's appearance at the next succeeding term after the motion to quash is made is not dependent on the fact that the service is quashed. If so, it would result in this, that his appearance to contest that service which is defective would operate as an appearance at the next term, but his appearance to contest service not defective would not. This was certainly not contemplated by the statute. Hence it is the appearance of the defendant, invoking the court's decision of the question whether it has been properly served, which constitutes the appearance at the next term under this article, and this is the rule intimated in several cases, but distinctly declared in York v. The State, supra.

If this is not the proper construction of the statutes referred to, and the statement of facts containing the evidence on the question of Davis' agency on which the court below held the service to be valid can be said to properly present the question in connection with the bill of exceptions setting forth only the grounds of objection to the court's rul-

ing, then we can not say from this evidence that the court was not authorized to hold that J. A. Davis was appellant's agent. It was admitted that the Ætna Life Insurance Company had complied with the laws of this State regulating insurance companies prior to 1878, and had appointed J. A. Davis as its agent under power of attorney filed in the Department of Insurance, Statistics, etc. This power authorized him to accept service in behalf of the company.

Davis testified that he had been the agent of the company up to 1878 and general manager for the company in this State. He had no such authority under power of attorney since 1878. The company had discontinued its business here since then. In special cases he is still employed to investigate claims and losses. He collected the premiums on the policy of J. S. Hanna annually since 1878, for the general agent of the company (C. H. Brush) at Philadelphia. The receipts were sent to him by the company on its usual forms for collection. He never heard of any objections made by the company to these collections. He testified that he knew the assured, and collected premiums from him from 1872 to 1878.

J. K. P. Hanna testified that he corresponded with Davis and had conversations with him in reference to the policy. He professed to have authority to adjust the loss and settle the policy from the company, and exhibited to him a letter to that effect from one of the officers of the company. Davis furnished him with blanks for proof of death. Premiums were paid to him and the company's receipt returned therefor. Letters were introduced from Davis to the witness, dated in November and December, 1886, with letter heads as follows:

"J. A. DAVIS,
"Collector and Adjuster,
"Ætna Life Insurance Co.,
　"Weatherford, Texas.

"WEATHERFORD, TEXAS, Nov. 30, 1886."

Similar letters having reference to a policy issued by appellant in favor of one R. P. Perkins, addressed to "Mr. C. R. Breedlove, Brenham, Texas," in April and May, 1885, were in evidence. There was no proof of any written or other formal revocation by the company of the power of attorney filed as stated.

As a general rule it is well settled that the fact of agency can not be established by the declarations of the agent alone. In this case it will be observed that no objection whatever was made to the testimony of the witness. We do not think under all the facts that it can be said that the court was not authorized to find that Davis was the agent of the company. It appears from the statement of the witness J. K. P. Hanna that he was authorized by the officer of appellant to adjust the loss and settle this policy. It might be inferred from this alone that

he was clothed with the authority and powers of an agent in respect to this policy, but in addition to this it was shown that a power of attorney in writing was executed by appellant, under article 2946, Revised Statutes, constituting Davis and others agents in this State. This appears to have been filed in the proper department, as required by that article. It is nowhere shown that appellees or the assured ever had knowledge of the fact that it was withdrawn or revoked. That the agent himself knew that he was not acting under this power, or that the company had in fact withdrawn its business from the State, ought not to affect those dealing with him where not shown to have knowledge of that fact. In other words, it is well settled that the revocation, if shown, takes effect as to the agent when known to him, and as to third persons when it is made known to them, and not before. 2 Greenl. on Ev., note to sec. 68.

Upon this branch of the case it may be said that under the rule announced in York v. The State, supra, the special appearance to contest the service was a general appearance under the statute at the next term. We conclude also that the answer filed at the June term, 1888, operated under the statute to dispense with the issuance or service of citation. Again, we think there was evidence which authorized the court to hold that Davis was in fact the agent of appellant with respect to this policy and its adjustment, and that therefore the court did not err in holding the service to be valid.

Appellant's proposition under the second question raised is: "When one of the conditions of the policy provides that in case the assured shall become so far intemperate as to impair his health seriously and permanently or induce delirium tremens, the policy shall be void, null, and of no effect, and a collection of same can not be enforced after the death of the assured."

The policy contained this condition of forfeiture. It is urged by appellant that the weight of the evidence establishes this defense, and therefore the judgment should be reversed.

In reply to this assignment it is sufficient to say that the testimony was conflicting. If the jury had found that the policy was forfeited by the assured by reason of the breach of the condition on which the defense is based, we do not think the verdict could be disturbed because not authorized by the evidence. It is for this reason that we can not hold that the evidence does not sustain the judgment.

Much of the evidence of appellant's witnesses is to the effect that intemperate habits of the assured impaired his health, and there is testimony that he had delirium tremens. This is notably so in the evidence of Dr. Jones, who states that in his opinion the death of the assured was the result of alcoholic poison. He had at one time been the physician to the assured, but had not stood in that relation for some years immediately preceding his death. Did not attend or examine him in

his last sickness.   The testimony of appellees disclosed the fact that the witness above mentioned and the assured were not on friendly terms.

Dr. Parker testified that he was the physician to the assured and his family, and had been since 1875.   The assured died on April 14, 1886, of apoplexy, or hemorrhage of the brain.   He denied that his death was attributable to or caused by the use of liquor.   The evidence of this witness and others who knew the assured establishes the fact that he was a remarkably healthy and vigorous man, who had attained at the time of his death 67 years of age.

The jury were authorized to conclude from this evidence that his intemperate habits did not seriously impair his health.   Several witnesses who were intimately acquainted with Major Hanna, the assured, testified that if his health was seriously and permanently impaired by his intemperance they could not perceive it.   If it was not perceptible then to those who thus knew and associated with him, it is not singular or unreasonable that the jury did not perceive that fact.

The appellant's witness Dr. Jones did state that Major Hanna had delirium tremens at one time.   No more specific date or occasion is given than "in 1884 or 1885."

J. K. P. Hanna, one of the plaintiffs, testified, that for several years prior to his death he was constantly with his father, the assured, and had never known him to have delirium tremens.

None of the numerous witnesses who testified that he was addicted to periodical sprees had ever heard of his being thus affected.

The main witness for the appellant was contradicted in many important features of his testimony.   He stated that on the Sunday preceding the Wednesday on which Major Hanna died he was in the town of Calvert drunk and boisterous, and finally became stupid, and was suffering in marked degree from alcoholic poison, and he is satisfied this caused his death.   In addition to the contradiction of this by Dr. Parker, the attending physician of the assured, it was proved that Major Hanna remained at home the week before his death until Friday preceding it, and that he came home that night drunk, but was apparently in his usual health the next day.

It was, as is well known, the jury's province to reconcile the conflicting evidence, and to give to that of each witness the credence it was in their opinion entitled to.   This they have done, and in this state of case, when the testimony is conflicting, the verdict can not be disturbed.

There is no assignment of error contained in appellant's brief properly presenting the question as to the waiver of the condition of forfeiture by the company.   It is argued by appellant that there was no evidence authorizing the submission of this issue to the jury by the court.

The court charged the jury that if the company accepted the premiums on the policy of the assured with a knowledge that his intemperate

habits were such as to seriously, etc., impair his health or induce delirium tremens, this would be a waiver of the condition. The evidence shows that from 1882 to 1885 inclusive the premiums were annually paid to the company's agent (Davis), and receipted for by the secretary of the company. They recite that the policy is continued in force for twelve months from the payment of the premium, and that the company does not intend to waive any forfeiture caused by intemperance of the assured, etc. That the appellant received the premiums through J. A. Davis can not be disputed. He was therefore the agent of the company with respect to this policy. Bliss on Ins., p. 453. He testifies that he knew the assured; that he resided in Weatherford, Texas; had collected the annual premiums on this policy from 1872 to 1886, fourteen years. These had been received by appellant and receipted for. If there was any breach by the assured of the condition, there is nothing to indicate that it was concealed or could have been suppressed or concealed from the company. Under these circumstances, and there being no proof that the habits of Major Hanna were not known to the company, we think the receipt of these premiums by the company for that length of time was well calculated to induce the assured in his life to believe that any prior breach of the condition by the assured had been waived. If not, on what principle could the company claim the payment of the premiums or decline to return them? If the company knew that the policy was forfeited, it had no right to the premiums. If it did not know it, then the premiums should have been returned when the fact was ascertained. The facts in this case authorized the charge complained of.

No other errors being assigned, and believing that those mentioned are not well taken, we think the judgment ought to be affirmed.

*Affirmed.*

Adopted June 23, 1891.

Judge COLLARD did not sit in this case.