**LAW UNION & ROCK INS. CO., LIMITED, OF LONDON, v. SCOTT et al.   (No. 3485.)**

Court of Civil Appeals of Texas. Texarkana. Dec. 20, 1927.

Rehearing Denied Jan. 5, 1928.

1. Insurance ⟪═⟫665(8)—Evidence held insufficient to show insurer's estoppel.

In action on fire insurance policy, evidence *held* insufficient to show that insurer was estopped to rely on provision of policy regarding change in title of insured property by representations of former agent, who had written policy, but whose agency had terminated about six months before representations were made, of which representations defendant insurer knew nothing, where insurer gave timely and reasonable public notice of ·cessation of agent's authority and recorded appointment of new agent, under Rev. St. 1925, art. 5065.

On Rehearing.

2. Principal and agent ⟪═⟫151(3)—Presumption of continued agency did not apply, where principal gave sufficient notice to public of revocation of agency.

Presumption of continued agency did not apply, where principal gave reasonable notice, in ways unequivocal and of sufficiency to afford knowledge of revocation, to public at large in locality, and recorded appointment of new agent, under Rev. St. 1925, art. 5065.

3. Insurance ⟪═⟫373(1)—Where insurer gave sufficient notice to public of revocation of agent's authority, it was unnecessary to bring personal information home to insured, in order not to be bound by former agent's representations.

Where insurance company gave reasonable notice, sufficient to afford knowledge of revocation of agent's authority to public at large in locality, and recorded appointment of new agent, under Rev. St. 1925, art. 5065, it was unnecessary that personal information be brought home to insured, having policy written by such agent, in order not to be bound by agent's representations thereafter regarding necessity of indorsement of change of title of insured property on fire insurance policy.

4. Estoppel ⟪═⟫52—Estoppel does not arise without fault.

Estoppel does not arise without fault.

Error from District Court, Titus County; R. T. Wilkinson, Judge.

Action by S. C. Scott and others against the Law Union & Rock Insurance Company, Limited, of London. Judgment for plaintiffs, and defendant brings error. Reversed and rendered.

The suit was on a fire insurance policy, in the sum of $2,000, covering a dwelling house totally destroyed by fire on February 10, 1926. The insurance company filed a general denial, and specially pleaded, in avoidance, the violation by the insured of the following stipulation of the policy:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if any change, other than by death of the insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or by voluntary act of the insured or otherwise."

The plaintiffs by supplemental petition pleaded, in detailed statement, estoppel from asserting the alleged forfeiture, as well as assignment of the insurance to Mr. Fuquay, based upon knowledge of the change of ownership of the property and waiver of any written memorandum on the part of an authorized agent of the company. The insurance company replied, denying agency, any notice of the change in title and transfer of insurance, and waiver.

The case was tried before the court without a jury, and judgment was entered in favor of the plaintiffs. The facts are agreed upon by the parties, and are as follows:

On April 18, 1923, plaintiff in error issued a policy of fire insurance in the sum of $2,-000 to the defendant in error S. C. Scott, covering a dwelling house owned by him. The policy was for a period of three years from its date. The policy was issued by the insurance company's authorized agent at Mt. Pleasant, J. B. Rowland, doing business under the trade-name of the "Mt. Pleasant Insurance Agency, J. B. Rowland, Manager." J. B. Rowland was the duly appointed and sole agent of the company from 1922 to August 7, 1925. He attached two "riders" to the policy in suit while agent—one on June 15, 1923; the other on June 10, 1924. The

---

⟪═⟫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

house was totally destroyed by fire on February 10, 1926. Proofs of loss were duly made. The policy contained the stipulation pleaded in the answer. There was no indorsement on the policy of an agreement to make subsequent sale of the property, nor any notation indorsed or added thereto of assignment of insurance to Mr. Fuquay. No notice was given to the company, nor any attempt made to notify it of the sale of the property, or of the request of assignment to Mr. Fuquay.

It was agreed by the parties that on February 5, 1926, Mr. Scott, joined by his wife, conveyed by deed the dwelling house described in the policy, as well as the land on which it was situated, to Joe Riddle, who on the same date conveyed the same property by deed to O. M. Fuquay. As admitted, "both deeds were drawn up, executed, and delivered at the same office and at the same time." The consideration to Mr. Scott was $200 cash and a vendor's lien note for $1,800, bearing 8 per cent. interest from date. The further agreed facts appear:

(1) "That immediately after the execution and delivery of the said deeds, at the instance of the plaintiff Fuquay and in his own behalf, Scott went to his lock box in the town of Mt. Pleasant and took the contract or policy of insurance and carried the same to the insurance office of J. B. Rowland, and to J. B. Rowland himself in person, and handed the policy to J. B. Rowland, and informed said Rowland that he had that day executed a deed and had delivered the same, and that O. M. Fuquay was the owner of the property, and that plaintiff had $1,800 in vendor's liens against the place. That he told Mr. Rowland as follows: 'I told Mr. Rowland who I had sold it to, and told him I wanted the insurance transferred to Mr. Fuquay, and that I was holding an $1,800 equity in the place. Mr. Rowland took the policy, and looked at it, and said: 'This policy expires in April, and probably Mr. Fuquay will sell this place in a few days, and then we will transfer the policy; and if Mr. Fuquay does not, whenever it expires, we will make the transfer then to whoever owns it.' Mr. Rowland told Mr. Scott, 'It is all right the way it stands now;' and Mr. Scott replied, 'Well, if it is all right, that is all I want.' Mr. Rowland said, 'It is all right to let the policy stand like it was.' Mr. Rowland put no indorsement on the policy; he just handed the policy back to Mr. Scott, and told him that it was all right for it to stand just like it was. Mr. Rowland used this expression, 'When we renew it, we will change it.'"

(2) "It is agreed that on August 7, 1925, Mr. C. L. Duncan, an insurance agent of Mt. Pleasant, became an agent of the defendant company at Mt. Pleasant and vicinity. The agency for the defendant company, formerly held by J. B. Rowland (from 1922 to August 7, 1925), and all supplies in the way of policy forms, was transferred on that date to C. L. Duncan; and from that date, including and after February 10, 1926, the said C. L. Duncan held himself out to the public in Mt. Pleasant and vicinity as agent of the defendant company. On August 11, 1925, the defendant company filed designation with the

department of insurance, Austin, Texas, designating C. L. Duncan as its agent at Mt. Pleasant, and no revocation was ever filed with the commissioner of insurance. C. L. Duncan distributed blotters with the name of defendant and his own name as local agent of defendant printed thereon, in the various business houses in Mt. Pleasant and vicinity. J. B. Rowland's authority as agent of defendant was terminated on August 7, 1925, and his commission of authority taken up."

(3) "It is agreed that the plaintiffs, or either of them, made no inquiry from any one in an effort to determine whether or not J. B. Rowland was still the agent of defendant company. J. B. Rowland did not claim on February 5, 1926, or any time thereafter, that he was the agent of defendant, and has not claimed to be agent of defendant since August 7, 1925. That neither plaintiff knew of the termination of the agency of J. B. Rowland until several weeks after the destruction of the house. That plaintiff Scott, at the time he went to the office of J. B. Rowland and informed him that he had sold the property and wanted the policy changed, believed that J. B. Rowland was still the agent of the defendant. That the defendant had never informed him that J. B. Rowland was no longer its agent at Mt. Pleasant, and had never given any public notice of any character or through public print of the termination of his agency. * * * Prior to August 7, 1925, defendant delivered to J. B. Rowland printed blotters, with its name and the name of J. B. Rowland as agent, and the plaintiffs obtained some of these blotters a few days before the loss of the house by fire from the office of J. B. Rowland, and at the time of the conversation in evidence some of the blotters were in possession of J. B. Rowland."

(4) "It is agreed on February 12, 1926, after the fire, Mr. Wendt, an independent adjuster, of Dallas, Texas, at the request of defendant, came to Mt. Pleasant for the purpose of making an investigation. He and J. B. Rowland and Mr. Scott went to the burned house and inspected the ruins. Before Mr. Wendt reached Mt. Pleasant, Mr. J. B. Rowland requested Mr. Scott to get up an estimate of the value of the building, which Mr. Scott did do, and had it ready when Mr. Wendt arrived at Mt. Pleasant, and he turned it over to Mr. Wendt. Mr. Wendt did not know that J. B. Rowland had ceased to be agent of defendant, and did not know that Mr. Scott had sold and transferred the property. The estimate presented by Mr. Scott was $2,300. Mr. Wendt, believing the amount subject to a 20 per cent. reduction for age depreciation, offered Mr. Scott $1,800. Mr. Scott did not want to close the matter at that time, and Mr. Wendt told him to let Mr. J. B. Rowland know that afternoon. During the afternoon Mr. Scott decided to take $1,800, and so notified J. B. Rowland. J. B. Rowland wrote a letter for Mr. Scott, advising Mr. Wendt that Mr. Scott would settle the loss for the $1,800. On February 15, 1926, and before the letter was received, Mr. Wendt heard that the insured property had been sold by Mr. Scott prior to the date of the fire, and Mr. Wendt then made investigation and found upon the records in the county clerk's office the recorded deeds from Mr. Scott to Riddle, and Riddle to Mr. Fuquay. Mr. Scott did not know J. B. Rowland was not still the agent of defendant, and did not know that Mr. Wendt

did not know of the sale of the property. Mr. Scott answered all questions inquired about concerning the loss, and concealed nothing pertaining to the loss inquired about."

The simple question on appeal is that of whether estoppel in pais arises in the special facts.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error.

I. N. Williams, of Mt. Pleasant, for defendants in error.

LEVY, J. (after stating the facts as above). The policy in suit is conditioned to "be void" in case "any change, other than by death of the insured, take place in the interest, title, or possession" of the property subsequent to the date of the policy, without the "agreement" of the company "indorsed" on the policy. It is an admitted fact that Mr. Scott, the insured, made completed subsequent sale of the property on February 5, 1926, before the day of the fire on February 10, 1926, and that no "agreement" or permission was "indorsed" on the policy to make such change of title. The company, as admittedly shown, never waived the stipulation, and had no notice at all of the sale, and no attempt was made to notify it. Notice may not be imputed to it by reason of consent or knowledge acquired by agent, for it was established that C. L. Duncan, the sole authorized agent, in no wise had dealing with the matter, and had no knowledge of it. Therefore the contractual right of avoidance of the policy is conclusively made to exist, and must be enforced, unless, as admitted by the insured, estoppel in pais, as pleaded, arises in the special facts, precluding the assertion of the right of forfeiture.

The precise acts and conduct which are claimed to amount to an estoppel, together with all the evidence in relation thereto, appear in the agreed facts set out above. Looking to the special facts, it appears that the insured immediately informed J. B. Rowland of the sale of the property, and, handing him the policy, requested that "the insurance be transferred to Mr. Fuquay," the purchaser of the property. After looking at the policy, Mr. Rowland replied as follows:

"This policy expires in April. Probably Mr. Fuquay will sell this place in a few days, and then we will transfer the policy; and, if Mr. Fuquay does not, whenever it expires we will make the transfer then to whoever owns it."

Further, as Mr. Scott said:

"Mr. Rowland put no indorsement on the policy; he just handed it back and told me: 'It is all right for it to stand like it was. When we renew it, we will change it.' "

The language of Mr. Rowland does not conclusively show that he, in intent and purpose, was agreeing to the sale and transfer of the insurance, as well as to make "indorsement" on the policy thereof, at the time he "handed the policy back" to the parties. At most, it amounted to nothing more than a bare promise to "make the transfer" in the future, either when "Mr. Fuquay will sell this place," or after the present "policy expires in April," and "when we renew it." It may be that the words "it is all right" could extend to and include an expressed consent to the alienation of "the title" to the property by the insured. It will be assumed, however, as the defendants in error seem to insist, that J. B. Rowland assured the parties that both the conveyance of the "title" to the property and the sale and "transfer of the insurance" were "all right," and would be recognized, equivalent to an oral agreement in such respects.

Such assurance and consent of J. B. Rowland was, as claimed by the defendants in error, nevertheless binding on the company, although the authority of J. B. Rowland as agent was terminated, because the defendants in error had no knowledge of the termination of the agency. They invoke the general rule, quoting it:

"The acts of an agent after his authority has been revoked bind a principal as against third persons, who, in the absence of notice of the revocation of the agent's authority, rely upon its continued existence."

Stated in other words, if an insurance company has appointed an agent to transact business for it, parties dealing with him in that business have a right to rely upon the fact of a continuance of his authority as such agent until informed in some way, either in person or by circumstances, of its revocation. The rule is founded upon the doctrine of estoppel. The final element of estoppel is that the person claiming it has been misled into such action by the other party that he will suffer injury if the estoppel is not declared. Did the company mislead the other parties? The question involves consideration in the evidence of the necessity and sufficiency of notice to the defendants in error. Looking to the special facts, it appears, first, that the policy was for the period of three years from April 18, 1923. The premiums were fully paid. It was a completed transaction, and nothing more remained to be done. It was in no wise a transaction uncompleted before the revocation. The company did not have to agree to subsequent conveyance "of title" or "transfer of insurance." The insured was in no special relation different from that of general policyholders in the locality; and there is no pretense of the company's holding out J. B. Rowland as an agent after August 7, 1925, or that J. B. Rowland was undertaking to act as the agent of the company. On the contrary, it was agreed that:

"J. B. Rowland did not claim on February 5, 1926, or at any time thereafter, that he was the

agent of defendant, and has not claimed to be agent of defendant since August 7, 1925."

After August 7, 1925, J. B. Rowland was in no wise clothed with indicia of authority of an agent. It was agreed that "on August 7, 1925, * * * all supplies in the way of policy forms were transferred [from J. B. Rowland] to C. L. Duncan"; the latter being the newly appointed and sole agent from and after August 7, 1925. The necessity of notice, as relied on, especially to the insured, appears in the agreed facts to the extent only:

"That neither plaintiff knew of the termination of the agency of J. R. Rowland until several weeks after the destruction of the house [by fire]. The plaintiff Scott, at the time he went to the office of J. B. Rowland and informed him that he had sold the property and wanted the policy changed, believed that J. B. Rowland was still the agent of the defendant; that the defendant had never informed him that J. B. Rowland was no longer its agent at Mt. Pleasant, and had never given any public notice of any character or through public print of the termination of his agency. * * * Prior to August 7, 1925, defendant delivered to J. B. Rowland printed blotters, with its name and the name of J. B. Rowland as agent; and the plaintiffs obtained some of these blotters a few days before the loss of the house by fire from the office of J. B. Rowland, and at the time of the conversation in evidence some of the blotters were in possession of J. B. Rowland."

Was there sufficiency of notice? As appears:

"J. B. Rowland's authority as agent of defendant was terminated on August 7, 1925, and his commission of authority taken up."

He was not afterwards agent "at Mt. Pleasant and vicinity." As appears:

"On August 11, 1925, the defendant company filed designation with the department of insurance, Austin, Texas, designating C. L. Duncan as its agent at Mt. Pleasant, and no revocation was ever filed with the commissioner of insurance. C. L. Duncan distributed blotters with the name of defendant and his own name as local agent of defendant printed thereon, in the various business houses in Mt. Pleasant and vicinity. * * * On August 7, 1925, * * * all supplies in the way of policy forms were transferred [from J. B. Rowland] to C. L. Duncan. * * * J. B. Rowland did not claim on February 5, 1926, or any time thereafter, that he was the agent of defendant, and has not claimed to be agent of defendant since August 7, 1925."

It is clearly shown that there were reasonable efforts in good faith to give local notoriety of the termination of the agency of J. B. Rowland and the appointment of C. L. Duncan as sole agent. There was even recordation, as authorized by statute (article 5065, R. S. 1925), of the fact. The company did not quietly withdraw Rowland's agency. The circumstances tend conclusively to show that by the exercise of ordinary caution the insured would have been timely and suffi-ciently led to knowledge of the revocation. All the parties lived in the same town, which was not one of a large population. Added to these efforts appear the undisputed facts that:

"J. B. Rowland did not claim on February 5, 1926, or any time thereafter, that he was the agent of defendant, and has not claimed to be agent of defendant since August 7, 1925. * * * C. L. Duncan distributed blotters with the name of defendant and his own name as local agent of defendant printed thereon, in the various business houses in Mt. Pleasant and vicinity. * * * From that date (August 7, 1925), including and after February 10, 1926, the said C. L. Duncan held himself out to the public in Mt. Pleasant and vicinity as agent of the defendant company."

The public generally had reasonable notice of the termination of the agency. Yet, as admitted:

"The plaintiff or either of them made no inquiry from any one in an effort to determine whether or not J. B. Rowland was still the agent of defendant company."

The case would be an entirely different one, had the facts shown a recent termination of the agency of J. B. Rowland, and only a quiet withdrawal of his authority, without circumstances to publicly indicate cessation of such authority. It would be extreme to hold the company liable upon the ground of estoppel in the special facts. Quoting from the case of Ins. Co. v. Campbell, 42 Neb. 208, 60 N. W. 599:

"To hold otherwise would make the insurer liable for the acts and conduct of those who confessedly were not its agents, and who were no longer in its employ. Counsel * * * invoke the familiar rule that, where the relation of principal and agent has once been established, it will be presumed as to third persons to continue. The answer to this is that this presumption of law was entirely overcome by undisputed evidence that the relation of principal and agent which had once existed between Ayerst & Taffinder and the company had been terminated. It can make no difference that the insured had no notice that the agency had ceased and that other agents had been appointed."

We have been referred to no case of similar facts where the rule invoked has been applied. The present case is not comparable to the line of cases cited by defendants in error. In the case of Insurance Co. v. McCain, 96 U. S. 84, 24 L. Ed. 653, the special facts on which that case turned were, as stated therein:

"The policy was received from an agent of the company, one B. F. Smith, who was appointed to solicit applications for policies and collect premiums for a district of country embracing a part of Mississippi and also a part of Alabama, in which the insured resided. To him the first premium was paid. The second premium, due on the 10th of December, 1869, was paid on the 5th of that month to his subagent, who, before the 10th, handed him the amount, and it was

credited in his account rendered to the company in April following. The account disclosed the fact that the amount was received upon the policy in question. After its receipt, no communication was made by the company to the assured that Smith was not its agent at the time of the payment, nor was any objection made to the sufficiency of the payment. The insured died in June, 1870."

Clearly the silence of the company, after receiving the statement of the agent that the premium had been paid to him, is equivalent to an adoption of the act of the agent. The above case is illustrative of a long line of similar cases. No such facts, though, are to be found in the present case. In the case of Insurance Co. v. Hanna, 81 Tex. 487, 17 S. W. 35, the facts on which the question turned as stated therein are:

"Davis [after his agency terminated in 1878] * * * collected the premiums on the policy of J. S. Hanna annually since 1878, for the general agent of the company (C. H. Brush) at Philadelphia. The receipts were sent to him by the company on its usual forms for collection. He never heard of any objections made by the company to these collections."

An entirely dissimilar case to the present one.

In the case of Gragg v. Insurance Co. (Ky.) 107 S. W. 321, the case turned on the bare question of the sufficiency of the notice of termination, the court holding the issue one for the jury in the special facts proven. It was shown to the extent only that:

"In March, 1904, Wait was discharged or removed as agent, and Denton & Robinson, who also had an office as insurance agents, * * * were appointed agents in his place." In February, 1904, the policy was issued by Wait as agent of the company. In May, 1904, Harry Wait consented that the policy might be transferred to appellant. That Wait, although removed, "continued to act as agent in the settlement of policies that were issued by him. That Wait at the time he consented to the transfer of the policy notified the company of the fact."

There was no effort at notoriety or notice at all of the termination of the agency. The agency was merely quietly withdrawn. The insured in that case was justified in believing that Wait was still the authorized agent, through the neglect or fault of the company. The company was "notified" by Wait of "the transfer of the policy," and did not repudiate the act. Another line of cases involve purely special transactions of trading corporations and partnerships, initiated and not completed before revocation of agency and of the business relation, and no attempt to give any notice thereof. In Insurance Co. v. Threlkeld, 60 Ark. 539, 31 S. W. 265, it appeared, as stated, that:

"John J. Sumpter & Co. had exercised "authority for some time with the knowledge and approval of" the company. "The fact that it furnished blanks for the report of such action is

significant. It clearly implies that the authority was given."

There were clear grounds of estoppel in that case, wholly differing from the present case. It would serve no purpose to further illustrate the cases, as all of them are of special facts entirely differing from those of the present case.

[1] We believe the evidence is entirely insufficient to meet the requirements of an estoppel. J. B. Rowland was not authorized to make the "agreement"; the company gave timely and reasonable public notice of cessation of his authority; the company never ratified or adopted the agreement, or even knew of it at all; the insured was not justified by any act of the company in believing that Rowland was still the authorized agent.

The judgment is therefore reversed, and judgment is here entered for plaintiff in error; the defendants in error to pay all costs.

### On Rehearing.

Defendants in error insist:

"That if your opinion shall stand as against a rehearing, it is in conflict with the principle laid down in Ruling Case Law, p. 860, reading: 'So far as third persons are concerned, the principal, as a rule, may revoke the authority of his agent at any time; but it is settled that the acts of an agent after his authority has been revoked bind a principal as against third persons, who, in the absence of notice of the revocation of the agent's authority, rely upon its continued existence.' "

[2-4] The cases are practically unanimous on this general concept. It is often stated as if it were an axiom. It means that, in the case of mere revocation, it is the fault, as constituting the element of fraud, of the principal, if notice is not given to third persons, and that therefore the principal is bound by the agent's act, upon the doctrine of estoppel. It further means that the doctrine of estoppel furnishes the basis upon which one person may be bound by acquiescence, as constituting the element of admission, in the acts or conduct of a discharged agent who had dealt with a third person in such manner as to create the appearance of agency. The rule quoted is therefore controlling, according to the proof of particular facts of each case, with the distinction mentioned constantly recognized.

In the present case upon the conclusive proof that J. B. Rowland's agency had terminated, the presumption no longer could be indulged of continuity of agency. This rule of presumption peculiarly concerns burden of proof or duty of producing evidence, wherever from one fact another is presumed. 1 Greenleaf on Evidence, § 42; 10 R. C. L. p. 872, § 15; 1 Jones on Evid. p. 293. And the evidence is conclusive that the company did not merely revoke the agency without notice. Reasonable notice was given in ways une-

quivocal and of sufficiency to afford knowledge of revocation to the public at large in the locality. A reasonably prudent person, in the exercise of ordinary caution, upon mere inquiry would have been led to a knowledge of the revocation. In such facts it was unnecessary that personal information be brought home to the defendants in error, the company having reasonably done what it could to make the revocation as notorious in the locality as was the fact of previous agency. Defendants in error admitted that they "made no inquiry from any one in an effort to determine whether or not J. B. Rowland was still the agent of defendant company."

As appears, they had had no dealings with J. B. Rowland, as agent, since June 10, 1924, to date of sale of property in February, 1926. It is further conclusively proven that there was no holding out in any way by the company of J. B. Rowland as its agent, or adopting or acquiescing in any acts done by him. The company never knew of the purported agreement of J. B. Rowland. In no wise does the element of admission of agency appear by acquiescence of acts done by Rowland with third parties. In these facts, the rule must be applied, in denial of liability. It is the general principle of elemental and substantial justice that estoppel does not arise without fault.

In the original opinion the disposition of the case was made to turn upon the single point, quoting:

"We believe the evidence is entirely insufficient to meet the requirements of an estoppel. J. B. Rowland was not authorized to make the 'agreement'; the company gave timely and reasonable public notice of cessation of his authority; the company never ratified or adopted the agreement, or even knew of it at all; the insured was not justified by an act of the company in believing that Rowland was still the authorized agent."

The facts are agreed and without conflict. The motion is overruled.