## TEXAS HARDWARE MUT. FIRE INS. CO. v. FLEWELLEN.
### No. 7889.

Court of Civil Appeals of Texas. Austin.
Jan. 10, 1934.

Rehearing Denied Jan. 23, 1934.

Cox & Brown, of Temple, and Thompson, Knight, Baker & Harris and Robert Lee Guthrie, all of Dallas, for plaintiff in error.

Tyler, Hubbard, Countess & White, of Belton, for defendant in error.

BAUGH, Justice.

Flewellen sued plaintiff in error, hereafter designated as the insurance company, on an alleged insurance contract, made with him by the insurance company's agent on March 15, 1932, covering, amongst other property, a barn near Little river in Bell county, which was destroyed by fire on March 31, 1932. Trial was to a jury on special issues, answered favorably to Flewellen and judgment rendered in his behalf, from which this writ of error is prosecuted.

It appears that some time in 1928, upon written application therefor, signed by Flewellen, said insurance company issued and delivered to Flewellen policies of insurance on several different properties, including the barn in question, located on a farm near Little river, and on city property in Belton, Tex. These policies, for reasons not essential to the issues here presented, were converted or rewritten, without written application therefor executed by the insured, on October 4, 1929, and extended for a period of three years from that date. The original policies were procured by the agent Oliver. In 1931, before said policies expired, Flewellen canceled his policies with the Texas Hardware Mutual on his city property, and procured insurance thereon in a competing company. Thereupon, on June 4, 1931, the plaintiff in error canceled the policies on his farm property as undesirable risks on the ground that they could not carry his bad risks unless he also let them carry his good risks. The unearned premiums were returned to, and accepted by, Flewellen. But Flewellen claims not to have known at that time the company's reasons for such cancellation.

Thereafter one Tennison, agent of the company, approached Flewellen and solicited a return of his insurance business; and about March 15, 1932, some nine months after the cancellation of said policies on the rural property, W. B. Oliver from the home office at Dallas, in company with Tennison, who was a district agent, came to Flewellen's place of business at Belton, explained to him the reasons for such cancellation, and solicited a return to their company of his insurance business. It was on this occasion that the contract sued upon was alleged to have been made by Oliver, which was, in brief, that Oliver agreed orally that Flewellen's canceled policy would be reinstated for a period of three years from that date, under the same terms and on the same property as theretofore covered, and that such insurance was effective from that date, viz., March 15, 1932. No written application was then signed by Flewellen, no policy was issued, and some two weeks thereafter the barn in question burned.

In addition to denial of the making of the oral contract alleged, the insurance company defended on the ground that Oliver was an agent of limited authority, that this fact was shown in the company's application forms, and that Oliver had no authority to make any such contract as that alleged. To this defense Flewellen pleaded estoppel of the company to deny said agent's authority, based on the acts of the company and those of the agent.

The insurance company presents two contentions: First, that it was entitled to an instructed verdict because the undisputed evidence showed that Oliver was an agent of limited authority and not authorized to make any such contract, and that this fact was known to Flewellen; and, second, that the court erred in excluding as evidence a blank "application and binding receipt" customarily used by agents of the company in soliciting business, which were sent in to the home office, and which form of application contained limitations upon the agent's authority. This printed form also provided that, in the absence of special agreement from the home office, same was to bind the company only for five days after its execution. The instrument offered was not signed by any one, but was merely a blank form used generally.

■ No question is raised as to the authority of a general agent of an insurance company to make an oral contract of insurance, such as is here claimed, binding on his principal.

That appears to be conceded. The agent Oliver, had he been so authorized, could bind the insurance company by the oral contract alleged, which was sufficiently proved by competent evidence of at least three witnesses, and found by the jury to have been made. The jury found in answer to special issue No. 1 that Oliver had authority from the company to make such a contract. If there be sufficient evidence to sustain this finding, whether such authority of the agent were express, or only apparent or implied under the circumstances, absent knowledge by Flewellen of a limitation thereon, the first contention of the insurance company cannot be sustained.

We think there was sufficient evidence to sustain that finding. Oliver and the president of the company both testified that Oliver's authority was limited to soliciting and forwarding applications to the home office from which place alone policies were issued; that he had no authority to execute or deliver policies; and that the applications themselves so recited. However, Flewellen testified that he knew nothing of such limitations on Oliver's authority. The only application he was shown to have signed was in 1928. The policies rewritten in October, 1929, including the one on the property here involved, and which was canceled in June 1931, were issued without any written application therefor. Renewals of expiring policies were shown to have been habitually written without application. In the instant case it clearly appears that the company had reconsidered its apparently retaliatory action in canceling part of Flewellen's policies because he had taken other more desirable risks away from it, and had sought to regain such business by sending a man from the home office at Dallas for that purpose. It is not controverted that Flewellen had not requested any such course. The obvious purpose of Oliver's visit to Belton was in the interests of his company and to secure a return of Flewellen's business, either by reinstating the old policies, or rewriting new ones. The president of the company had himself canceled the policies in June 1931. Apparently some correspondence had passed between the insured and the company about the matter, and either Flewellen was dissatisfied, or the company was doubtful about the propriety or wisdom of its acts in canceling the policies. Sufficiently so, at any rate, that said agent was sent from the home office at Dallas to see Flewellen concerning this very matter. And the president of the company testified: "I had a communication from Mr. Tennison with reference to the Flewellen insurance, in which he asked for information. I did not discuss that with Mr. Oliver. I turned it over to him. It was with my knowledge he had the matter for handling."

Flewellen testified also that in former dealings with Oliver they had merely orally agreed on the property covered, the rate, amount of insurance, etc.; and that policies were then sent him in accordance with the oral agreement. And further that, on the date in question, when Oliver agreed to reinstate the canceled policy effective from that date, he offered to take Oliver to inspect the property; but that Oliver stated that that was unnecessary because he had written the original policy, had then inspected the property, was familiar with it, had all the necessary data in the home office at Dallas, on which to prepare a new policy, and that all that was necessary to make his insurance effective immediately was an agreement between them to that effect.

In addition to the foregoing, and other similar evidence, from which the jury might properly conclude that the insurance company had given Oliver general authority commensurate with the mission on which he came to Belton to confer with Flewellen, there was introduced without objection copy of said company's application to the state commissioner of insurance for an agent's license for Oliver. This application was made by the president of the company, and not by the agent, and contained the representation, among others, that "full responsibility is assumed for acts done by the said agent pursuant to this appointment." Plaintiff in error insists, however, that under the holding in Great American Casualty Co. v. Eichelberger (Tex. Civ. App.) 37 S.W.(2d) 1050, 1051, this constituted no proof of the agent's authority. We concur in the holding in the case cited that such license issued by the insurance commissioner to an agent is not in itself any evidence of the authority conferred upon him by his principal. It does not appear in that case whether the agent himself or his principal applied for the license there in question. Article 5055, R. S. 1925, and article 572, Penal Code, clearly impose upon the agent himself the duty of procuring a license, and not upon the insurance company whom he may represent. Any representations of the agent to the insurance commissioner beyond the scope of the authority given him by his company would not, of course, be admissible against his principal. But, where the company itself, not being required to do so, voluntarily makes such representation to the commission-

er, who acts on behalf of the public, as to its own agents, such representations would, we think, be competent evidence against the company, especially where, as here, it was not objected to, as to the scope or apparent scope of the agent's authority. And this view is in no way, we think, in conflict with the rule announced in the Eichelberger Case.

Consequently, we think that the evidence was sufficient to sustain the jury finding on the authority of Oliver in the instant case, if not expressly given, at least that he acted within the apparent scope of his authority in handling the matter intrusted to him by the insurance company. No good purpose would be served by discussing the rules of law applicable to the apparent authority of the agent in such cases. It will suffice to refer to 2 Tex. Jur. 425, 531 et seq.; 24 Tex. Jur. 808, and cases there cited.

This conclusion renders unnecessary a discussion of the issue of estoppel, likewise found by the jury in favor of Flewellen, as being sufficient to defeat the insurance company's asserted right to a peremptory instruction.

The other contention relates to the exclusion as evidence of the proffered blank form of application used by the agents of the insurance company generally in soliciting business. Had the contract here in question been one of insurance in the regular course of the company's business, such as an original policy, or had the company pleaded its custom in such cases and that such custom was or should have been known to the insured, the instrument should properly have been admitted. But no such issues were made by the pleadings. The insurance company denied in toto the execution of any contract of insurance with Flewellen, and nowhere did it plead any custom of dealing as limiting the agent's authority. The limitations referred to in the application form were testified to by the agent and by the president of the company so far as his authority to write insurance generally was concerned. But the case here made was not one based upon the written application for a policy. No written application was made and none requested to be executed by Flewellen. Had he signed a written application for the rewritten policy of October 1929, or for a reinstatement of such policy, he would, of course, have been charged with knowledge of such limitations as that application contained. The contract here asserted was not entered into in accordance with the company's usual course of business, but in the nature of a special contract, which the insurance company was not prevented by law from making. And the limitation upon the authority of the agent prescribed in a written application, though clearly admissible against the insured where the execution of such application is necessary to the validity of the insurance contract, is not evidence against the insured where the contract asserted is one in which no written application was executed or necessary to be executed. The inquiry in the latter case is, not what the agent was authorized to do in the usual course of such business, but whether he had authority to depart from that usual method of securing insurance upon written application and make the oral contract sued upon. Under such circumstances, we think the instrument offered was not competent evidence on the issues made in this case.

. Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.