**WESTERN MILLERS MUTUAL INSURANCE COMPANY, Appellant,**

v.

**J. M. WILLIAMS, Appellee.**

**No. 15756.**

United States Court of Appeals
Fifth Circuit.
April 12, 1956.

426

Thomas W. Hathaway, Ben F. Johnson, Tyler, Tex., for appellant. Johnson & Hathaway, Tyler, Tex., of counsel.

Rex Houston, Gordon R. Wellborn, James N. Phenix, Henderson, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

This action was brought to recover the proceeds of a fire insurance policy issued by appellant to appellee through its agent, R. L. Price, on July 7, 1953, in the face amount of $5,000.00. Appellant defended on the theory that the policy had been cancelled on September 6, 1954, prior to the loss on September 10, 1954. Trial to a jury resulted in a verdict and judgment for appellee, and the main inquiry upon this review is whether the proof and controlling Texas authorities support the jury finding and award based upon Price's apparent authority orally to revoke appellant's attempted cancellation.

The policy was issued upon the Texas standard form, for a term of five years, with a total premium of $176.00. Appellee made a down payment of $44.00 to appellant's agent, Price, upon issuance of the policy on July 7, 1953, and, executed a deferred premium note in favor of the Fort Worth National Bank at Fort Worth, Texas to secure payment in three succeeding annual installments of the premium balance, the installments being due on successive anniversary dates

of the policy, i. e., on July 7, 1954, July 7, 1955 and July 7, 1956.[1]

According to testimony by appellee and Price, appellee gave Price the money for the installment premium due on July 7, 1954, three days late on July 10, 1954,[2] and was given a company receipt therefor. It is undisputed, however, that Price did not then forward appellee's cash payment either to the Fort Worth bank named as payee in the deferred premium note or to appellant, but simply placed the money in his hip pocket and forgot about it until appellee's first cancellation notice was received.[3]

Upon receipt of such notice, appellee again went to see Price in Tyler, Texas, who assured him that he "was dealing with a regular agent" and that appellee "would get a letter reinstating it", so he should simply disregard the notice, upon which representations appellee relied without further action. Two or three days later, after Price had forwarded his personal check to the Fort Worth National Bank as payment of appellee's premium, appellee did in fact receive a letter from appellant revoking its prior cancellation notice,[4] just as Price had represented he would. However, Price's personal check, forwarded by him in lieu of appellee's cash payment previously received, was subsequently dishonored for insufficient funds, as a result of which a second notice of cancellation, dated August 26, 1954, was received by appellee on August 28, 1954, notifying him that his coverage would cease in accordance with the policy cancellation provisions at 12:-01 A. M. on September 6, 1954. This second cancellation notice, however, appeared to have been issued both by "R. L. Price Insurance Agency" and "Thomas M. Ryan Company," by one James H. Fulton, rather than simply bearing a notation that a copy had been sent to Price, as the first notice had done.

On the same day that he received this second cancellation notice, appellee called Price by phone to protest, but was again reassured that he could safely "disregard

---

1. The note further provided, in pertinent part, as follows:

 "Any or all of the above described policies may be canceled by the Bank, at any time, after first giving ten days' written notice of its intention to cancel by depositing such notice in ordinary mail directed to the undersigned at the designated address appearing below. If payment is not made in full of the unpaid balance hereunder within ten days after the mailing of such notice, the Bank may without further notice cause to be canceled, and may demand and receive all return premiums on, all policies listed above, and for such purpose the undersigned hereby constitutes and appoints the Bank attorney-in-fact and agent of the undersigned, to execute any and all instruments in that behalf which may in the judgment of the Bank be necessary, and action of the Bank in canceling any such policy shall be conclusive and binding upon the undersigned. The undersigned will at any time, either before or after cancellation, upon demand therefor deliver all policies to the Bank. The undersigned hereby authorizes the Bank to pay the net proceeds of this notice, to the named insurance companies, or authorized agents thereof."

2. Appellee testified that his delay in payment was in reliance upon Price's representation that he had "ten or maybe thirty days" after the due date to pay the premium, and that "it wasn't convenient to come any quicker" to Tyler, Texas, and make the cash payment to Price, as the latter suggested.

3. This notice of cancellation bore the names of "Thomas M. Ryan & Company" and "R. L. Price Insurance Agency", and stated "the Policy will be canceled and all liability of (appellant) under said Policy will cease at and from 12:01 A.M. standard time, August 9, 1954, without further notice."

4. This letter, dated August 3, 1954, informed appellee that "the cancellation notice effective August 9, 1954, on above captioned policy has been withdrawn and the policy is now in full force and effect," and was signed by appellant's general agent, Thomas M. Ryan & Company, with a notation that a copy was sent to "R. L. Price Insurance Agency." Though appellant in brief refers to this letter as "reinstating the policy," actually the policy was then still in full force and effect anyway, since this first attempted cancellation of the policy by its express terms was not to become effective until August 9, 1954. (Footnote 3, supra.)

it" and need not worry because another letter revoking the company's cancellation would be forthcoming; that he, Price, was appellant's "legal agent", and that appellee's property was still covered. Appellee relied upon all of these representations by Price [5] without conferring either with the Bank or with appellant direct. Furthermore, although Price's agency had by then been terminated by appellant, it is without dispute that appellee had no actual notice of such termination.

Finally, on the evening of September 9, 1954, less than twenty-four hours before the total destruction of appellee's property by fire, and three days after the purported effective date of the cancellation of appellant's coverage under its second notice, it was shown that Price went by appellee's home, and admitted that this second cancellation notice had been prompted by his own dereliction in tendering his insufficient funds check in payment of the premium. Price then gave appellee a money order receipt showing payment of the delinquent premium installment, and, according to further credited testimony by appellee, assured him that he should not worry about his property because his insurance was in force "if it burns down tonight." Price's money order did not reach the bank until September 13th, three days after the fire, at which time it was rejected on the ground that cancellation of appellee's coverage had antedated the loss.

Price's agency in fact with appellant having been expressly terminated before the loss occurred, though without actual notice to appellee, and appellant having intended by its second notice to cancel appellee's coverage before any liability arose, the crucial inquiry under this proof is whether, under the applicable Texas authorities, Price nevertheless had apparent or ostensible authority; after termination of his express agency, orally to bind appellant with his revocation of its second cancellation notice; or, stated differently, whether because of appellant's prior representations and course of conduct it is now estopped to deny Price's authority to revoke its second cancellation prior to the loss. Speaking recently upon this doctrine of apparent authority, the Supreme Court of Texas has held:

> "The doctrine of apparent authority is based on estoppel, and one seeking to charge a principal through the apparent authority of an agent to bind the principal must prove such conduct on the part of the principal as would lead a reasonably prudent person, using diligence and discretion, to suppose that the agent has the authority he purports to exercise. Great American Casualty Co. v. Eichelberger, Tex.Civ.App., 37 S.W.2d 1050, writ refused." Chastain v. Cooper & Reed, 152 Tex. 322, 257 S.W.2d 422, 427.

The general rule, however, in Texas and elsewhere, is that an insured is entitled to assume that an insurance agent is continuing to act within the scope of his agency, unless and until he has either actual or constructive notice to the contrary; and "a revocation by the principal, of the general authority of his agent, is ineffective as between the principal and such third persons as deal with the agent, as such, on the faith of the continued existence of his authority, without notice of the revocation." Scott v. Law, Union & Rock Ins. Co., Tex.Com. App., 12 S.W.2d 147, 149; Aetna Life Ins. Co. v. Hanna, 81 Tex. 487, 17 S.W. 35; 24 Texas Jurisprudence, p. 803; 29 Am.Jur., Insurance, § 88, p. 11; 14 A.L. R. 846. While the declaration and representations of the agent alone are insufficient to establish the scope of his authority to bind his insurer, we think Texas law authorizes recovery in a situation where, as here, an insurer has by its own confirmation and ratification of similar

5. Appellee relied also upon certain other indicia of Price's authority to act for appellant, which he had seen at Price's office in Tyler, Texas, such as stationery bearing appellant's letterhead.

acts by its agent at least impliedly, albeit inadvertently, misled an insured to his prejudice in his reliance upon that same agent's repeated assertions of his continuing authority. See Great American Casualty Ins. Co. v. Eichelberger, Tex.Civ.App., 37 S.W.2d 1050, 1052; Texas Hardware Mut. Fire Ins. Co. v. Flewellen, Tex.Civ.App., 68 S.W.2d 521, 524; Prudential Fire Ins. Co. v. Williams, Tex.Civ.App., 148 S.W.2d 264, 265.

■■ Applying the above rules, we think appellant's proof is not only insufficient to show either actual or constructive knowledge by appellee of any limitation on Price's continuing authority to bind it, but reads as fairly and affirmatively implying simply a continuation of his previously exercised authority to revoke appellant's attempted cancellation in much the same manner as Price had theretofore effectively revoked appellant's first attempted cancellation of the policy, with express company approval. Considering other testimony showing appellant's knowledge that Price was attempting to pay the premium which he had already collected from appellee, its notation on the first cancellation notice forwarded to appellee that an information copy had been mailed to Price, and the clear implication upon the face of its second notice of cancellation that it had originated jointly from appellant's general agent and Price, in the light of the comparatively short period of time intervening between appellant's termination of Price's agency and the loss,[6] we think that appellee was not foreclosed from recovery as a matter of law by his asserted lack of diligence and ordinary business acumen in failing to verify Price's authority during this period. Price's repeated assurances of his continuing authority to act as "legal agent" for the company, coupled with the other indicia tending to support its existence, were enough to induce a reasonable belief by appellee that Price could do again what he had already successfully done once before, i. e. revoke appellant's cancellation and continue the coverage. In view of the equivocal situation apparently existing during this period between appellant and Price, inferably precipitated by Price's own derelictions, but unknown to appellee, we think it was incumbent upon appellant to give appellee some positive notice of Price's lack of actual authority during this period, so that he would have had a chance to protect his property otherwise, rather than to permit his continued reliance upon Price to his prejudice.

■ There remains for consideration only appellant's suggestion that appellee was himself estopped by the express provisions of his deferred premium payment note to the Bank,[7] from disputing the Bank's authority effectively to cancel his coverage in the manner attempted prior to the loss. Cf. United Fidelity Life Ins. Co. v. Fowler, Tex.Civ.App., 38 S.W.2d 128, 131. We do not construe the doctrine of "estoppel by contract" as applicable to bar recovery under the facts shown, especially since we think appellant, by its own acquiescence in Price's collection and attempted payment of the delinquent premium and its own attempted cancellation, has itself assumed positions inconsistent with the express provisions of the note, and in effect waived its right now to insist upon such strict compliance by appellee with its terms. See Home Ins. Co. of New York v. Roberts, 129 Tex. 178, 100 S.W.2d 91, 93. But pretermitting the inferentially contested issue of whether appellant's strict reliance upon the provisions of the note is, in effect, in conflict with Texas' asserted statutory policy prohibiting an insurance company from so circumscribing the authority of its authorized agents to transact its business,[8] we merely hold

6. Appellant revoked Price's agency on August 25th, by mailing the required statutory notice of its cancellation to the Board of Insurance Commissioners at Austin, Texas, but admittedly without any notice of its action to appellee. As heretofore stated, the loss occurred on September 10th, only about two weeks later.

7. See Footnote (1), ante.

8. See R.C.S. of Texas, V.A.T.S. Insurance Code, Articles 21.02, 21.09, 21.14.

that the instant proof is sufficient under Texas law to justify the jury's finding of appellant's liability, based on Price's apparent authority to revoke the second cancellation notice. Texas Hardware Mut. Fire Ins. Co. v. Flewellen, supra.

Affirmed.